**ASSOCIATED DRY GOODS CORPORATION, Plaintiff,**

v.

**UNITED STATES, et al., Defendants.**

**Court No. 81–4–00375.**

United States Court of International Trade.

May 21, 1981.

Rode & Qualey by Michael S. O'Rourke and Patrick D. Gill, New York City, for plaintiff.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., for defendants; David M. Cohen, Branch Director, Commercial Litigation Branch and Velta A. Melnbrencis, New York City, of counsel.

*Memorandum and Order on Plaintiff's Motion for a Preliminary Injunction*

RE, Chief Judge:

In this action, plaintiff seeks preliminary and permanent injunctive relief against the imposition of certain import restraint levels on wool sweaters exported from the People's Republic of China ["China"]. These restraint levels were established by the Committee for the Implementation of Textile Agreements ["CITA"] and are enforced by the United States Customs Service.

The action was commenced on April 13, 1981 by a motion for a preliminary injunc-

tion and an application for an order to show cause why the requested injunctive relief should not be granted. The court issued the order to show cause, and an evidentiary hearing was held on April 22, 1981. Defendants' opposition to the requested injunctive relief was combined with a motion to dismiss for failure to state a claim upon which relief can be granted. At the conclusion of the hearing, from the bench, the court denied the motion for a preliminary injunction, and reserved decision on defendants' motion to dismiss. The court further advised the parties that the case would be assigned to a judge who would provide immediate judicial supervision and prompt disposition on the merits.

This action arises out of Section 204 of the Agricultural Act of 1956 ["section 204"], 7 U.S.C. § 1854, which authorizes the President to enter into agreements with foreign governments limiting the exportation and importation of agricultural commodities and textile products, and to issue regulations to carry out those agreements.

CITA was established by Executive Orders of the President[1] to supervise the implementation of textile agreements entered into pursuant to section 204. It was also authorized to direct the Commissioner of Customs to take such actions as CITA recommends to carry out the agreements.

On September 17, 1980, the United States and China entered into an Agreement Relating to Trade in Cotton, Wool and Man-Made Fiber Textiles and Textile Products [the "Agreement"]. Paragraph 8 of the Agreement provides in material part:

(a) In the event that the Government of the United States believes that imports from China "classified in any category or categories not covered by Specific Limits are, due to market disruption, threatening to impede the orderly development of trade between the two countries", the United States may request consultations with China with a view towards avoiding such market disruption. At the time of the request,

---

1. Ex.Ord.No.11651, 37 Fed.Reg. 4699 (1972), as amended by Ex.Ord.No.11951, 42 Fed.Reg. 1453 (1977), Ex.Ord.No.12188, 45 Fed.Reg. 989 (1980).

the United States is to provide China with "a detailed factual statement of the reasons and justification" for the request, together with current data, which shows "the existence or threat of market disruption" and the contribution of imports from China to the disruption;

(b) China agrees to consult with the United States within 30 days of receipt of a request for consultations, and both sides agree to make every effort to reach agreement on a mutually satisfactory resolution of the issue within 90 days of the receipt of the request;

(c) During the 90-day consultation period, China agrees to hold its exports to the United States in the category or categories subject to the consultations to a level no greater than 35% of the amount entered in the latest twelve-month period for which data are available; and

(d) If no mutually satisfactory solution is reached during the consultations, China will limit its exports in the category or categories under the consultations for the succeeding twelve months to a level of 6% above the level of imports entered during the first twelve of the most recent fourteen months preceding the date of the request for consultations.

Under the Agreement, textiles and textile products are classified according to categories: wool sweaters for men and boys are covered in category 445; wool sweaters for women, girls and infants are covered in category 446. The Agreement does not impose a specific limit upon the importation of category 445/446 merchandise to the United States.

Pursuant to paragraph 8(a) of the Agreement, on October 18, 1980, the United States requested consultations with China with regard to category 445/446 merchandise produced or manufactured in China which was being exported to the United States. A notice of the request was published in the Federal Register on October 27, 1980 [45 Fed.Reg. 70960]. The detailed factual statement, required by paragraph 8(a) of the Agreement, was issued by CITA containing those facts which formed the basis of the United States' request for consultations.

The consultations between the United States and China did not lead to a mutually acceptable solution to the problem of category 445/446 merchandise. Accordingly, CITA decided to establish import restraint levels based upon the formula set forth in paragraph 8 of the Agreement, and to prohibit entry of imports of category 445/446 in excess of 183,706 dozen, representing the combined restraint level for the 90-day consultation period and the succeeding twelve-month period. On January 19, 1981, CITA published a notice ["Notice"] in the Federal Register to that effect [46 Fed.Reg. 5033–4].

The Notice directed the Commissioner of Customs, effective January 19, 1981, and for the period October 19, 1980 through January 16, 1982, to prohibit entry into the United States for consumption and withdrawal from warehouse for consumption of wool textile products in category 445/446, produced or manufactured in China and exported on and after October 19, 1980, in excess of 183,706 dozen.

The 183,706 dozen limit for category 445/446 textile products produced or manufactured in China and exported since October 29, 1980 was filled on February 9, 1981.

After February 9, 1981, plaintiff sought to enter into the United States category 445/446 textile products (wool sweaters) produced or manufactured in China. Pursuant to the Notice, plaintiff's importations were refused, or excluded from entry.

On March 12, 1981, plaintiff filed Protest Nos. 1001–1–002939, 1001–1–002940 and 1001–1–002941 protesting the refusal to release, and exclusion of, or delivery into the United States, of its wool sweaters, pursuant to the Notice. On March 30, 1981, plaintiff filed Protest No. 1001–1–003596 similarly protesting the refusal to release, and exclusion of, or delivery into the United States of certain other wool sweaters. The first three, but not the last, of plaintiff's four protests were denied by the Customs Service before this action was commenced on April 13, 1981.

Plaintiff's motion for preliminary injunction alleges that plaintiff will be irreparably harmed if injunctive relief is not granted and seeks an order: enjoining CITA "from authorizing or permitting establishment of restraint levels for wool textile products in category 445/446, produced or manufactured in the People's Republic of China in derogation of the provisions of the Bilateral Textile Agreement signed on September 17, 1980"; directing the Commissioner of Customs to allow entry of all wool textile products in category 445/446 produced or manufactured in China and exported on or after October 19, 1980, without regard to the number of units imported. Alternatively, plaintiff seeks an order enjoining the Customs Service from not allowing entry or withdrawal from warehouse for consumption of wool textile products in category 445/446, produced or manufactured in China, and exported on or after October 19, 1980, up to 237,613 dozen or, in the alternative, up to 220,392 dozen.

Plaintiff does not challenge the President's authority to enter into the Agreement, but rather alleges that the Agreement was unlawfully implemented by CITA. More specifically, plaintiff alleges that CITA's request for consultations with China was made without any evidence of market disruption or a threat of market disruption. It therefore contends that: the request for consultations made on October 18, 1980 by CITA was arbitrary, capricious and an abuse of discretion; the Agreement does not authorize CITA to combine, as it did, the restraint and consultation levels in calculating the import restraint level pertaining to category 445/446 imports; and plaintiff was not given advance notice of CITA's request for consultations, nor was it afforded any opportunity to present its views to CITA prior to the request for consultations.

In opposition to the requested injunctive relief, and in support of its motion to dismiss, defendant contends that part of the action should be dismissed since the court has jurisdiction only over those claims which derive from plaintiff's three denied protests. Defendants also contend that:

plaintiff lacks standing to challenge the Agreement or its implementation; the issues raised by plaintiff regarding the Agreement or its implementation are non-justiciable political questions; the contested actions of CITA and the Customs Service were taken in accordance with law; no violations of plaintiff's procedural due process rights occurred with regard to the request for consultations with China; and plaintiff has failed to state a claim upon which relief may be granted.

This court's recent opinion in *American Air Parcel Forwarding Company, Ltd. v. United States,* 1 CIT ——, 515 F.Supp. 47, (1981), discussed the factors to be considered by the court in deciding a request for interlocutory injunctive relief. *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977), and *Virginia Petroleum Jobbers Association v. F.P.C.,* 259 F.2d 921 (D.C.Cir.1958). *See also S.J. Stile Associates Ltd. v. Dennis Snyder,* 67 CCPA ——, C.A.D. 1261, 646 F.2d 522 (1981); *A.O. Smith Corp. et al. v. F.T.C.,* 530 F.2d 515 (3d Cir. 1976).

In *Holiday Tours,* the Court of Appeals for the District of Columbia, quoted from the "leading case" of *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir. 1953), which explained:

"To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."

The court, in *Holiday Tours,* at 844, also quoted from *Charlie's Girls, Inc. v. Revlon, Inc.,* 483 F.2d 953, 954 (2d Cir. 1973) (per curiam), which phrased the test in the following manner:

"One moving for a preliminary injunction assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor."

In summarizing the court's position in *Holiday Tours*, Judge Leventhal wrote:

"We believe that this approach is entirely consistent with the purpose of granting interim injunctive relief, whether by preliminary injunction or by stay pending appeal. *Generally, such relief is preventative or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit.* An order maintaining the status quo is appropriate when a serious legal question is presented, *when little if any harm will befall other interested persons or the public* and when denial of the order would inflict irreparable injury on the movant. There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success." *Holiday Tours*, at 844. [Emphasis added.]

In this case, the court has considered the relevant factors as well as the potential harm to other interested parties and the public interest if the court were to restrain the enforcement of the embargo, or quantitative restriction of general application on importations into the commerce of the United States.

■ In cases which seriously affect the public interest, a court of equity will require a much stronger showing before granting a preliminary injunction than is required when only private interests are at stake. *Virginia Ry. Co. v. System Federation*, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937). In cases of serious doubt, the discretion of the court must be exercised in a manner that would achieve the larger objectives of the public interest. See *Hecht Co. v. Bowles*, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944).

■ A preliminary injunction should be denied if it will adversely affect the public or other interested parties for which, even temporarily, an injunction bond cannot compensate. *Virginia Ry. Co. v. United States*, 272 U.S. 658, 674, 47 S.Ct. 222, 228, 71 L.Ed. 463 (1926). The court should withhold such relief until a final determination of the controversy, even though the delay may be burdensome to the plaintiff. *Yakus v. United States*, 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944). *See also Virginia Petroleum Jobbers Association v. F.P.C.*, 259 F.2d 921, 927 (D.C.Cir.1958).

Assuming plaintiff has overcome the burden of showing the probability of irreparable harm and the likelihood of success on the merits, or alternatively, that the parties have presented serious questions of law and that the balance of the hardships tips in favor of the plaintiff, the court must still protect the public interest.

On the question of the public interest, defendants maintain that to grant plaintiff's request for relief would adversely affect the ability of the United States to conduct its foreign policy with China and would impede the implementation of this and other bilateral textile agreements.

Defendants further contend that plaintiff has failed to demonstrate that its request for interlocutory relief will not injure the domestic sweater industry. In support of this contention, defendants state that, if the embargo is enjoined and the sweater market peaks and turns downward, the domestic manufacturers will suffer immediate injury due to the lower priced imports from China. These imports will continue to enter the shrinking American market in increased amounts thereby causing the cancellation of domestic orders not purchased with irrevocable letters of credit, and could drive some domestic manufacturers out of business. It is the defendants' position that in that situation, CITA must take special care to protect the domestic industry from massive imports.

Finally, defendants contend that even during the best of times for the domestic industry, the government must carefully

monitor surges in particular categories of imports. Otherwise, when the American market returns to a more normal level of demand following a temporary upswing, the established higher import level may serve as the basis for future imports, to the great detriment of the domestic industry.

 Preliminary injunctions are generally granted to preserve the status quo pending final determination of the controversy between the parties. *Holiday Tours*, at 844; *Hunter v. Atchison, T. & S.F. Ry. Co.*, 188 F.2d 294, 298 (7th Cir. 1951). When the granting of a motion for preliminary injunction would give a plaintiff all the advantages which would be obtained as a result of a final favorable adjudication of the controversy, the motion ordinarily should be denied. *Selchow & Righter Co. v. Western Printing & Lithographing Co.*, 112 F.2d 430, 431 (7th Cir. 1940).

In this case the requested injunction sought is against the enforcement of a quantitative restriction of general application on importations. Hence the plaintiff does not seek to preserve the status quo, but rather seeks to change it for its own pecuniary advantage. It is equally clear that a change would necessarily involve the temporary lifting of the existing restriction to permit plaintiff's importations to enter the stream of commerce throughout the United States. The market disruption repercussions are impossible to calculate in advance. Certainly they would inevitably affect the public interest and those of third parties in ways which could not possibly be compensated by an injunction bond. No bond could indemnify all of the interests affected, directly or indirectly, by the temporary lifting of the quantitative limitations.

The granting of plaintiff's request for an interlocutory injunction would achieve the ultimate relief sought in this action.

In the words of *Holiday Tours*, plaintiff has not shown that "little if any harm will befall other interested persons". Nor has plaintiff shown that the potential harm to the public interest could be, as it was in

*American Air Parcel*, "adequately indemnified by a bond". *Ohio Oil Co. v. Conway*, 279 U.S. 813, 815, 49 S.Ct. 256, 257, 73 L.Ed. 972 (1929). Consequently, the court has concluded that the public interest and that of third parties outweigh the alleged irreparable injury to plaintiff.

Under all of the circumstances, it is the determination of the court that the plaintiff's request for an interlocutory injunction be denied.