**ASSOCIATED DRY GOODS CORPORATION, Plaintiff,**

v.

**The UNITED STATES, et al., Defendants.**

**Court No. 81–4–00375.**

United States Court of International Trade.

Aug. 3, 1981.

Rode & Qualey, New York City (Michael S. O'Rourke and Patrick D. Gill, New York City, on the briefs) for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., David M. Cohen, Branch Director, Commercial Litigation Branch, New York City (Velta A. Meln-brencis, New York City, on the briefs); Pamela Breed, Deputy Asst. Gen. Counsel, Enforcement and Litigation, Dept. of Commerce, Washington, D.C., for defendants.

Daniels, Houlihan Palmeter, P.C. (Michael P. Daniels and Martin J. Lewin, Washington, D.C., on the briefs), for American Importers' Ass'n, Textile and Apparel Group, amicus curiae.

RAO, Judge:

Plaintiff, an importer of 100% Shetland wool full-fashioned ladies sweaters from the People's Republic of China (hereinafter PRC), contests the exclusion of its merchandise from entry by the Customs Service pursuant to a quota established for the merchandise by the Committee for the Implementation of Textile Agreements (hereinafter CITA). The case is before this court on defendants' motion to dismiss for failure to state a claim upon which relief can be granted and plaintiff's opposition thereto.[1] The American Importers Association, Textile and Apparel Group (hereinafter AIA–TAG) appears as *amicus curiae*, participating through the filing of briefs and in oral argument. A verified complaint has been served and filed, which defendants have answered.

This case arises under an Agreement Relating to Trade in Cotton, Wool, and Manmade Fiber Textiles and Textile Products between the United States and the PRC (hereinafter the Agreement) on September 17, 1980. Although this agreement specified quantitative limits for some categories of textile products to be exported from the PRC to the United States, the category into which the instant merchandise falls (category 446) is unlimited. See Annexes A and B to the Agreement.

Under Paragraph 8 of the Agreement the United States reserved the right to request consultations with the PRC if it believed that imports in any category or categories not covered by specific limits were, due to

---

1. Previously, The Chief Judge of this court had denied plaintiff's motion for a preliminary injunction. *See* 515 F.Supp. 775 (1981).

market disruption, threatening to impede the orderly development of trade between the two countries.[2]

On October 18, 1980 the United States requested consultations with the PRC with regard to category 445/446 merchandise. A notice of the request was published in the Federal Register on October 27, 1980 (45 Fed.Reg. 70960). These consultations did not result in agreement, and the United States proceeded to establish import restraint levels. CITA, which was empowered by Executive Order 11651 of March 3, 1972, as later amended, to supervise the implementation of all textile trade agreements, established an import restraint level of 183,706 dozen sweaters.[3]

On January 19, 1981 CITA published a notice in the Federal Register (46 Fed.Reg. 5033–4) directing the Commissioner of Customs to prohibit, effective January 19, 1981, for the period from October 19, 1980 through January 16, 1982, entry into the United States for consumption of wool sweaters in categories 445/446 produced or manufactured in the PRC and exported on or after October 19, 1980, in excess of 183,-706 dozen.

Plaintiff alleges and defendants admit that this quota was filled on February 9, 1981. Imports from the PRC of category 445/446 sweaters have been refused entry into the United States since that date.

The commercial invoices indicate that on September 25, 1980, 8 days after the Agreement was entered into by the PRC and the United States, plaintiff ordered approximately 1815 dozen sweaters, described as ladies 100% Shetland wool, 5 gauge, from various manufacturers in the PRC, and on October 15, 1980 it ordered an additional 1000 dozen. This merchandise was exported on January 18, 1981[4] and on January 24, 1981.[5] Plaintiff attempted to enter the merchandise subsequent to February 9, 1981, the date on which the quota was filled, but the Customs Service refused to

**2.** The full text of Paragraph 8, which delineates the consultation procedure and the remedies available if no agreement is reached is, because of its relevance to points discussed *infra*, set out in its entirety here:

8. (a) In the event that the Government of the United States believes that imports from the People's Republic of China classified in any category or categories not covered by Specific Limits are, due to market disruption, threatening to impede the orderly development of trade between the two countries, the Government of the United States may request consultations with the Government of the People's Republic of China with a view to avoiding such market disruption. The Government of the United States of America shall provide the Government of the People's Republic of China at the time of the request with a detailed factual statement of the reasons and justification for its request for consultation, with current data, which in the view of the Government of the United States of America shows

1) the existence or threat of market disruption, and

2) the contribution of exports from the People's Republic of China to that disruption.

(b) The Government of the People's Republic of China agrees to consult with the Government of the United States within 30 days of receipt of a request for consultations. Both sides agree to make every effort to reach agreement on a mutually satisfactory resolution of the issue within 90 days of the receipt of the request, unless this period is extended by mutual agreement.

(c) During the 90 day period, the Government of the People's Republic of China agrees to hold its exports to the United States of America in the category or categories subject to this consultation to a level no greater than 35 percent of the amount entered in the latest twelve month period for which data are available.

(d) If no mutually satisfactory solution is reached during these consultations, the People's Republic of China will limit its exports in the category or categories under this consultation for the succeeding twelve months to a level of 20 percent for man-made fiber and cotton product categories (and of 6 percent for wool product categories) above the level of imports entered during the first twelve of the most recent fourteen months preceding the date of the request for consultations.

**3.** According to the pleadings and briefs, this figure was arrived at by combining the restraint level for the 90-day consultation period and the succeeding 12-month period, based on the formulae contained in the Agreement, Paragraph 8(c) and 8(d).

**4.** Entries 81831758–7, 81831764–2, and 81831765–5.

**5.** Entry 81831759–0 and 8183175–4.

permit the importations to enter. The merchandise was, and continues to be, stored in a bonded warehouse. Plaintiff subsequently filed timely protests (Nos. 1001-1-002938, 1001-1-002939, 1001-1-002940 and 1001-1-002941), protesting Customs' refusal to release, and the exclusion of, the merchandise into the United States. These protests were denied by the Customs Service and this civil action timely followed. Protest No. 1001-1-003596 is hereby dismissed as untimely as it was not denied until after April 13, 1981, the date on which summons 81-4-00375 was filed.

It is plaintiff's position that its merchandise was wrongfully denied entry because CITA miscalculated the restraint level (quota) at 183,706 dozen sweaters and because CITA erred in concluding that importations of categories 445/446 merchandise from the PRC, between the period of time between September 17, 1980 and October 18, 1980 were causing market disruption, or threat of market disruption, based on the data then available to it with reference both to imports and to domestic production.

Defendants, through their motion to dismiss, bring into question this court's jurisdiction over this controversy, specifically denying that plaintiff has stated a claim as to which relief may be granted. Additionally, defendants contend that this court lacks jurisdiction in this matter because it involves foreign policy considerations and the conduct of foreign affairs. The court disagrees with both contentions.

I

■ The Customs Courts Act of 1980, Pub.L. 96-417, October 10, 1980, 94 Stat. 1727, not only restated the preexisting jurisdiction of this court, but also specifically provided that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for * * * embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." 28 U.S.C. § 1581(i)(3).

This court has previously considered the scope of this provision with respect to quotas in *Wear Me Apparel Corp. v. United States, et al.,* 1 CIT ——, 511 F.Supp. 814 (1981), wherein it said:

However, section 1581(a) is not the only jurisdictional provision applicable here. * * *

* * * * * *

Section 1581(i), as explained by the House Committee on the Judiciary (H.R. Rept. No. 96-1235, supra at 47), provides a broad "residual grant of jurisdictional authority * * * to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the district courts and the Court of International Trade * * * [and] makes it clear that all suits of the type specified are properly commenced only in the Court of International Trade."

Given the fact that the claims as to which a protest has been filed directly concern an import quota, these claims obviously arise "out of * * * [a] law * * * providing for * * * quantitative restrictions on the importation of merchandise." In that circumstance, section 1581(i)(3) specifically grants this court jurisdiction to entertain these claims.

Moreover, since these claims involve the administration and enforcement of quantitative restrictions, section 1581(i)(4) also provides jurisdiction. [15 Cust.Bull. No. 14 at pp. 30-1.1.]

Defendants have conceded that this court has jurisdiction pursuant to 28 U.S.C. § 1581(a), but only to the extent that this court could determine whether the Customs Service rightfully carried out the instructions of CITA in administering the quota. We conclude that this court has plenary jurisdiction to review the entire matter pursuant to section 1581(i)(3) and (4).

■ Defendants also address the issue as to whether plaintiff has stated a claim. The verified complaint alleges that plaintiff is the importer of record, that its merchandise was denied entry due to agency action

resulting in restraints on the number of sweaters that can be imported from the PRC, that it has been injured by this agency action in that it is losing sales on this merchandise and related sales on other merchandise, that the agency action was based in incorrect or incomplete data, and plaintiff prayed for specific and general relief. Considering the fact that the Customs Courts Act of 1980 was enacted in part to provide relief for importers aggrieved by agency action in one forum, this court concludes that plaintiff's complaint sufficiently states a cause of action.

Defendants also contend that plaintiff is attempting to interfere with the proper function of the Executive in foreign policy matters, and that the United States will be hindered in its further negotiations with the PRC relative to the Agreement and other matters if plaintiff is given the relief it seeks. However, plaintiff's sweaters have already been exported from the PRC and the irrevocable letters of credit have already accrued to the benefit of the PRC manufacturers. The impact of permitting or denying entry to plaintiff's merchandise will be felt by it alone and will have little or no bearing on further negotiations, either to expand or restrict the number of sweaters in categories 445/446 permitted entry into this country.

This court recognizes that actions of the President with respect to the negotiation, and the signing of treaties and foreign trade agreements are beyond its review. *Cf. William A. Foster & Co. (Inc.), et al. v. United States,* 20 CCPA 15, T.D. 45673 (1932), and generally, Sturm, *Customs Law and Administration,* § 60.2. However, it can be hardly concluded that CITA rises to the power and authority conferred on the President by the Constitution and by Congress. Absent a clear mandate from Congress that CITA's actions are to be vested with the mantle of Presidential immunity from judicial review, this court concludes that Congress did not intend to extend the President's protective shield to cover CITA's actions.

Additionally, CITA's actions in determining that consultations with the PRC were necessary with respect to categories 445/446 were more administrative than foreign policymaking. To arrive at a belief that there was market disruption or the threat of market disruption, CITA had to evaluate import data and the state of the domestic industry. If those actions or determinations were not based on sufficient data or if incorrect conclusions were drawn from such data and plaintiff was injured as a result, review of CITA's determinations by this court is proper.

II

Pursuant to section 8(a) of the Agreement, a condition precedent to a request for consultations by the Government of the United States with the Government of the PRC is a belief that imports from the PRC are threatening to impede the orderly development of trade between the two countries due to market disruption.[6] The term "market disruption" is not defined in the Agreement, but the parties have agreed that the definition of the term provided in Paragraphs I and II of Annex A of the Arrangement Regarding International Trade in Textiles commonly known as the Multifiber Agreement (hereinafter MFA), 39 Fed.Reg. 13308, 13311 (April 12, 1974), is applicable.[7] Market disruption, according to the MFA, must be based on the existence of serious damage to domestic producers or actual threat thereof caused by (1) a sharp and substantial increase or imminent increase of imports of particular products from particular sources and (2) the offering of these products at prices which are substantially below those prevailing for similar goods of comparable quality in the market of the importing country.

The detailed factual statement which the United States was required to provide to the PRC with the request for consultations pursuant to section 8(a) of the Agreement

---

**6.** See note 2, *supra.*

**7.** See, particularly, defendants' brief filed April 21, 1981, pp. 37–45.

did not establish the second of these factors. Its findings of offerings of "these products" related to all women's wool sweaters, not ornamented, in the middle value range classifiable under TSUS item 382.5871, but there is no indication that the domestic merchandise compared was "similar goods of comparable quality."[8] Indeed, it appears that what was compared was all women's wool sweaters, not ornamented, valued over $5 per pound, produced in the United States. A valid comparison was not made.

■ It therefore becomes unnecessary for this court to decide whether CITA should have considered those factors indicating the existence of damage, such as turnover, market share, profits, export performance, employment, etc., enumerated in Paragraph I of Annex A of the MFA as contended by plaintiff and *amicus curiae* or whether, as contended by defendants, those factors are relevant only to the existence of actual damage rather than the threat of damage. The finding by CITA of threat of market disruption in this case is unsupported by sufficient data.

### III

Plaintiff also contends that the formulae utilized to arrive at the restraint level were improperly applied. This court finds that in arriving at a quota of 183,706 dozen sweaters, CITA improperly combined the restraint levels established during the 90-day consultation period pursuant to section 8(c) and that established by section 8(d) of the agreement if the parties could not agree during the consultation period, and improperly imposed the restraint level retroactively to October 19, 1980, the date of the receipt of the request for consultation by the PRC.

Section 8(d) of the Agreement provides that if no mutually satisfactory solution is reached during the consultations, the PRC will limit its exports in the category or categories under the consultation *for the succeeding twelve months* to a level of 6 percent for wool product categories above the level of imports entered during the first twelve of the most recent fourteen months preceding the date of the request for consultations. It does not even impliedly permit the combination of this restraint level with that provided for in section 8(c) which is applicable during the 90-day consultation period, nor does it permit retroactive application of the restraint level to the date of receipt of the request for consultations by the PRC.

■ Defendant argues that plaintiff has no standing to question the terms of a trade agreement with a foreign country and that this court lacks jurisdiction to interpret the terms of trade agreements. The short answer to both these arguments is that plaintiff seeks, not to vary or question the terms of the agreement, but to review the actions of CITA, a government agency with specific delegated authority and duties, in implementing a restraint level on merchandise based on its (CITA's) interpretation of the meaning of the terms of that Agreement.[9] *That this court has jurisdiction to review agency action which impacts on imports is well settled.*

It is, therefore, the decision of this court that within 90 days CITA shall issue a new determination after a re-evaluation of the data on which it based its findings of threat

---

8. Market Statement to China of October 7, 1980:

   * * * The women's wool sweaters imported from China under TSUSA 382.5871 are in the middle value range among the major foreign suppliers but below the U.S. price (see table 5).

Table 5: Import Values and Domestic Price
(U.S. $ Per Dozen)

TSUSA No. 382.5871 — Women's wool sweaters, not ornamented, valued over $5 per pound

| | |
|---|---|
| China | $ 81.65 |
| Taiwan | 77.10 |
| Hong Kong | 100.45 |
| United States | 151.20 |

NOTE: Import values based on C/F duty-paid values.

9. CITA comes within the definition of governmental agency as "a subordinate creature of federal, state or local government created to carry out a governmental function or to implement a statute or statutes." *Blacks Law Dictionary*, 1979.

of market disruption. If, on reconsideration of all pertinent data, CITA finds that threat of market disruption, did in fact exist at the time it requested consultations with the PRC under the Agreement, it shall recalculate the restraint level in conformance with the holding in this case and give it prospective application from the end of the consultation period, that is, from January 19, 1981.

Since plaintiff attempted to enter its merchandise for consumption on February 18, 19, 26 and 27, 1981, a period during which the quota would have been open if it had not been applied retroactively, it is further adjudged that plaintiff's merchandise should be released. It is therefore ordered and adjudged that the Customs Service release the plaintiff's merchandise the subject of this claim with the exception of the merchandise the subject of Protest No. 1001–1–003596, which is untimely, from bonded warehouse and permit it to enter the stream of commerce of the United States.

Defendant's motion to dismiss is denied.