**SILVER REED AMERICA, INC. and Silver Seiko, Ltd., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Smith-Corona Group, Consumer Products Division, SCM Corporation, Intervenor.**

**Court No. 80-6-00934.**

United States Court of International Trade.

June 21, 1984.

Wald, Harkrader & Ross, Washington, D.C. (Christopher Dunn, William J. Clinton and William E. Shimer, Washington, D.C., of counsel), for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., Velta A. Melnbrencis, New York City, and Francis J. Sailer, Washington, D.C., for defendant.

Stewart & Stewart, Washington, D.C. (Eugene L. Stewart and Terence P. Stewart, Special Counsel, Washington, D.C.), Edwin Silverstone, New York City, and Robert E. Walton, King of Prussia, Pa., for intervenor.

NEWMAN, Senior Judge:

### Introduction

This case raises the novel and significant question of whether, following a decision in plaintiffs' favor on the merits in an antidumping case, stay of remand, and pending an interlocutory appeal filed by intervenor, plaintiffs' motion to enjoin liquidation of entries covered by a prior Court decision is barred by the doctrine of res judicata or collateral estoppel.

Plaintiffs, Silver Seiko, Ltd., a Japanese manufacturer and exporter of portable electric typewriters ("PETs"), and Silver Reed America, Inc., its wholly-owned importer (hereinafter "Silver" when used collectively), seek to enjoin liquidation of all entries of their PETs otherwise than in accordance with the final decision in *Silver Reed America, Inc. v. United States*, 7 CIT ——, 581 F.Supp. 1290 (1984), *appeal pending*, CAFC Misc. Docket No. 29. In the present case, Silver contested the Commerce Department's Affirmative Determination of Sales at Less Than Fair Value ("LTFV") concerning Silver's PETs; and in remanding the action to Commerce, this Court held that the exporter's sales price ("ESP") offset "cap" in 19 CFR § 353.15(c) challenged by Silver is invalid. Defendant, United States, opposes Silver's application respecting the entries covered by the Commerce Department's Early Determination of Antidumping Duties ("early determination entries") under section 736(c) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673e(c).[1]

---

1. 45 Fed.Reg. 53853 (August 13, 1980), as corrected in 46 Fed.Reg. 14006 (February 25, 1981). The Commerce Department's Early Determination covers entries from January 4 to May 7, 1980. January 4, 1980 was the date on which the Treasury Department issued its tentative determination of sales at less than fair value and suspended liquidation of entries. 45 Fed.Reg. 1220. May 7, 1980 was the date of publication by the International Trade Commission of its affirmative final injury determination. 45 Fed. Reg. 30188.

On January 2, 1980, Treasury's responsibility for the administration of the antidumping law was transferred to the Department of Commerce by the President's Reorganization Plan No. 3 of 1979. 44 Fed.Reg. 69275 and 45 Fed. Reg. 9931.

In *Brother Indus., Ltd. v. United States*, 3 CIT 125, 126, 540 F.Supp. 1341 (1982), *aff'd sub. nom. Smith Corona Group v. United States*, 713 F.2d 1568 (Fed.Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984) ("Brother"), the ESP offset adjustment under 19 CFR § 353.15(c) itself was challenged by SCM Corporation ("SCM"), but the Commerce Department's Early Determination under section 736(c) was upheld by this Court. Silver intervened in the *Brother* action in support of the ESP offset adjustment and Early Determination. The Government contends that respecting the early determination entries, *Brother* has res judicata or collateral estoppel effect on Silver's application to enjoin liquidation.

Intervenor, SCM, does not oppose Silver's motion, yet nevertheless argues that Silver has not established irreparable injury.

### Background

Silver commenced this action on June 6, 1980 under section 516A(a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2), to contest the Final Affirmative Determination of Sales at LTFV (45 Fed.Reg. 18416, March 21, 1980) and Antidumping Duty Order (45 Fed.Reg. 30618, May 9, 1980) of the United States Department of Commerce, International Trade Administration ("ITA"). Silver challenged ITA's LTFV determination primarily on the ground that the ESP offset cap in 19 CFR § 353.15(c) was invalid, and therefore, in comparing foreign market value with the exporter's sales price, ITA erred in limiting the deduction of home market selling ex-

penses in Japan to the amount of the selling expenses incurred in the United States market.

On August 29, 1980, almost three months after Silver commenced the instant suit, SCM filed an action challenging ITA's Early Determination under section 736(c) contending that the ESP offset *itself* was invalid, and as a result ITA erred in deducting any home market selling expenses from the foreign market value.[2] Silver intervened in the *Brother* action supporting ITA's ESP offset adjustment and Early Determination, but expressing dissatisfaction with the offset *cap* in 19 CFR § 353.-15(c). On April 30, 1982 this Court sustained ITA's Early Determination (*Brother, supra*) and upheld the ESP offset adjustment. That decision dissolved a preliminary injunction granted SCM on December 30, 1980, which had suspended liquidation of the early determination entries. However, by order dated June 28, 1982, SCM's motion for restoration of the injunction during pendency of its appeal was granted. *See* 3 CIT 242 (1982). On August 9, 1983 the Court of Appeals for the Federal Circuit affirmed this Court's decision of April 30, 1982 in *Brother* (3 CIT 125, 540 F.Supp. 1341). *Smith Corona Group v. United States*, 713 F.2d 1568 (Fed.Cir.1983), *cert. denied* —— U.S. ——, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). Subsequently, in an opinion and order issued on February 1, 1984, this Court sustained Silver's challenge in its own action to the March 21, 1980 LTFV Determination holding invalid the ESP offset cap in 19 CFR 353.15(c), and remanded to ITA for redetermination of the offset adjustment in accordance with

---

**2.** The Early Determination was also contested by the related companies of Brother Industries, Ltd. and Brother International Corporation (collectively "Brother"). Brother Industries, Ltd. is a Japanese manufacturer of PETs and Brother International Corporation is an importer of such merchandise from Japan. SCM intervened as a party-in-interest in Brother's case (Court No. 80–9–01436) while Brother and Silver, in turn, intervened in the SCM action (Court No. 80–9–01343). Subsequently, by order of this

Court entered December 30, 1980, the actions were consolidated. *See* 1 CIT 102 (1980). Further, on December 30, 1980 this Court granted SCM's motion for injunctive relief under section 516A(c)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(c)(2), staying liquidation of entries on and after January 4, 1980 to May 7, 1980 (the early determination entries) pending final disposition on the merits. *See* 1 CIT 89, 507 F.Supp. 1015 (1980).

the Court's decision.[3] *Silver Reed America, Inc. v. United States, supra.* By order of March 9, 1984 this Court granted defendant's motion for a stay of the remand order of February 1, 1984 (7 CIT ——, 581 F.Supp. 1290); and granted on March 16, 1984 SCM's motion for certification of the question of the validity of the ESP offset cap for an immediate appeal. Thereafter, on April 5, 1984, the Court of Appeals granted SCM permission to file an immediate appeal; and on April 17, 1984, an appeal was filed by SCM (CAFC Misc. Docket No. 29), which is now pending.

Following its successful litigation on the merits in the instant case, the stay of the remand, and pending SCM's interlocutory appeal, Silver now seeks to enjoin liquidation of all its entries covered by the May 9, 1980 Antidumping Duty Order from January 4, 1980, the date liquidation was first suspended, to the date notice of this Court's final judgment is published or until final disposition of this case on appeal. Specifically, the unliquidated entries for which Silver seeks injunctive relief fall into the following categories:

1. entries from January 4, 1980 to May 7, 1980, the subject of ITA's Early Determination and the *Brother* case;

2. entries from April 1, 1980 to March 31, 1981, covered by ITA's final results of its first administrative review pursuant to section 751(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a). 48 Fed.Reg. 4076, September 9, 1983;[4]

3. entries from April 1, 1981 to March 31, 1982, covered by ITA's second section 751(a) review, which has not yet been completed;

4. entries from April 1, 1982 to the date when a notice of the final Court decision in this case is published in the Federal Register.

Silver has not previously sought to enjoin liquidation of any entries of its PETs.[5]

## Res Judicata and Collateral Estoppel

Defendant does not oppose plaintiffs' application for an injunction except as to the early determination entries, *viz.*, those between January 4, 1980 and May 7, 1980. As mentioned *supra*, defendant contends that the judgment in *Brother* has res judicata or collateral estoppel effect on plaintiffs' present application respecting the early determination entries, and hence plaintiffs are barred from relitigating the amount of antidumping duties to be assessed upon the early determination entries. Before addressing defendant's contention, this Court notes the authoritative teaching of the Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n. 5, 99 S.Ct. 645, 649, n. 5, 58 L.Ed.2d 552 (1978) with respect to the doctrines of res judicata and collateral estoppel:

> Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is on a different cause of action and the judgment in the prior suit

---

**3.** While the issue of the validity of the ESP offset itself was *sub judice* in *Brother,* Silver did not proceed in the present case with the issue of the ESP offset cap, except for filing a complaint on July 3, 1980 and discovery. In response to Silver's motion under Rule 56.1(a) of the Rules of the Court, SCM cross-moved to dismiss for lack of prosecution. By order dated June 22, 1983, Silver's motion under Rule 56.1(a) was granted, and SCM's cross-motion to dismiss was denied. *See* 5 CIT ——, 565 F.Supp. 1047 (1983).

**4.** SCM in Court No. 83–10–010463 and Silver in Court No. 83–10–01522 challenged this determination, and these actions are pending in Consolidated Court No. 83–10–01522.

**5.** The injunction granted SCM to prevent liquidation of the early determination entries covered by the section 736 review (*See* 1 CIT 89, 507 F.Supp. 1015 (1980)) was in effect until August 9, 1983, when the issuance of the *SCM* decision by the Court of Appeals dissolved the injunction. Although the injunction was dissolved, the Court has been advised in Silver's brief, at 6, that "due to an extensive administrative backlog at the ITA, none of the section 736 entries [from January 4, 1980 to May 7, 1980] have in fact been liquidated to date".

precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

Continuing, the Supreme Court observed (*id.*):

Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.

*See also: Lawlor v. Nat'l Screen Svc.*, 349 U.S. 322, 326–27, 75 S.Ct. 865, 867–68, 99 L.Ed. 1122 (1954); *Partman Corp. v. Paramount Corp.*, 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954).

■ Fundamentally, of course, the doctrine of res judicata "applies to repetitious suits involving the same cause of action." *Comm'r v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1947). Significantly, however, Silver's cause of action in the present case is not the same as that upon which SCM sued in *Brother*. In its own action (the instant case) Silver challenged the LTFV determination of March 21, 1980 and the application by ITA of the ESP offset cap in determining foreign market value. In *Brother*, SCM challenged the ESP offset *itself* and other adjustments applied by ITA in determining foreign market value in arriving at the Early Determination of April 30, 1982. Silver intervened in *Brother* for the limited purpose of supporting the ESP offset and certain other adjustments to foreign market value in the Early Determination. The legal issue in Silver's own case—the validity of the ESP offset *cap* —was explicitly not before the Court in *Brother*. 3 CIT 143 n. 15, 540 F.Supp. 1341.

Moreover, in the *Brother* action, Silver as an *intervenor* could not have contested either the LTFV Determination or the Early Determination inasmuch as Silver intervened after the expiration of the thirty day

time limitation specified in 19 U.S.C. § 1516a for contesting such determinations.[6] Thus, in *Brother*, no timely cross-claim challenging the LTFV Determination or Early Determination could have been interposed by Silver. *Cf. Nakajima All Co., Ltd. v. United States*, 2 CIT 170, 171–72 (1980) (intervenor's proposed cross-claim contesting LTFV Determination after thirty day time limitation barred as untimely).

The purpose of res judicata, to prevent repetitious lawsuits involving causes of action that have been decided, cannot *possibly* be effectuated in the present circumstances. In this vein, it should be stressed that the substantive issue of the validity of the ESP offset cap in 19 CFR § 353.15(c), *has already been decided* by this Court favorably to plaintiffs. Plaintiffs' application to enjoin liquidation of entries does not require litigation of the ESP offset cap issue nor relitigation of any issue that was, or could have been, raised in *Brother*. The short of the matter is: Silver merely seeks to preserve the unliquidated status of its entries—including those from January 21, 1980 to May 7, 1980—for liquidation in accordance with the final decision in this case.

■ It is, of course, purely fortuitous for plaintiffs that the early determination entries still remain unliquidated. Plainly, the Government had the right to liquidate the early determination entries after the *SCM* decision became final in accordance with that decision. However, having remained unliquidated to the present time, the liquidation of these early determination entries, like liquidation of all other unliquidated entries covered by the antidumping duty order, should be subject to the final decision by the Court of Appeals or this Court in the present action. To apply res judicata or collateral estoppel to bar the equitable relief sought by plaintiffs respecting the early determination entries, as urged by defendant, would permit the Cus-

---

**6.** An early determination of antidumping duties under section 736(c) is reviewable as a section 751(a) determination. *Smith-Corona Group, Consumer Products Div., SCM Corp. v. United*

*States*, 1 CIT 89, 93–96, 507 F.Supp. 1015 (1980). Defendant concedes in its sur-reply brief, at 3, that in the *Brother* case Silver did not challenge the Early Determination under section 736(c).

toms Service to liquidate such entries in utter disregard of the final decision in the present case, resulting in the assessment of antidumping duties, whether or not there were any margins of dumping in connection with these entries. Such inequitable consequence is neither necessitated nor justified by the doctrine of res judicata or collateral estoppel. As observed in *The Timken Co. v. United States*, 6 CIT —, 569 F.Supp. 65 (1983), "[t]he doctrine of res judicata is an equitable one and the court is not bound to give res judicata effect to a previous judgment if an inequitable situation would thereby result". Consequently, the judgment in *Brother* does not bar Silver's application to enjoin liquidation of the early determination entries, as contended by defendant.

### Injunctive Relief

To prevail on their motion to enjoin liquidation of entries, plaintiffs must establish: (1) that they will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the moving party. These familiar criteria are well established and need not be elaborated upon. *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983); *S.J. Stile Assocs., Ltd. v. Snyder*, 68 CCPA 27, C.A.D. 1261, 646 F.2d 522 (1981); *Timken Co. v. United States*, 6 CIT —, 569 F.Supp. 65 (1983); *Associated Dry Goods Corp. v. United States*, 1 CIT 306, 515 F.Supp. 775 (1981); *American Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 515 F.Supp. 47 (1981). *See also Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977).

After careful consideration of the requisite criteria for granting injunctive relief, the Court concludes that Silver's application should be granted.

 Silver, as previously noted, has already successfully litigated the impropriety of the ESP offset cap in 19 CFR § 353.15(c). More, it is now settled that liquidation of entries may constitute irreparable injury. *Zenith Radio Corp. v. United States, supra; Timken Co., supra.* The Government currently holds Silver's deposits of estimated duties for all entries the liquidation of which Silver now seeks to enjoin. Indeed, defendant does not suggest that it would be harmed in any respect by enjoining liquidation (except for its contention concerning res judicata and collateral estoppel); and SCM has not claimed that it would be harmed by the requested injunctive relief.

Finally, the Court finds that the granting of injunctive relief in this matter would serve the public interest. At the present stage of this litigation, plaintiffs have already established the invalidity of the ESP offset cap. If this Court's decision invalidating the ESP offset cap is upheld on appeal, there may be no margins of dumping respecting any of Silver's entries. Surely, it cannot be in the public interest to assess antidumping duties respecting the early determination entries if there were no margins of dumping. While, of course, there is also a public interest in the finality of a prior judgment and avoidance of repetitive law suits involving the same causes of action or issues, that policy can have no application to the situation here, where plaintiffs clearly do not seek to relitigate a cause of action or issue involved in *Brother*, but merely seek the application of the final decision in this case to all unliquidated entries.

For the foregoing reasons, it is hereby ordered:

1) plaintiffs' motion to enjoin liquidation is granted; and

2) liquidation shall be suspended for all entries of PETs manufactured and imported by Silver Seiko, Ltd. and Silver Reed America, Inc., respectively, entered or withdrawn from warehouse for consumption from January 4, 1980 to and including the date of publication in the *Federal Register* by ITA of a notice of the final decision in this action. The suspension of liquidation

shall remain in effect until such date of publication, or until the final decision on appeal by the Court of Appeals for the Federal Circuit.