**SILVER REED AMERICA, INC. and Silver Seiko, Ltd., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Smith-Corona Group, Consumer Products Division, SCM Corporation, Intervenor.**

Court No. 80–6–00934.
Slip Op. 84–137.

United States Court of
International Trade.

Dec. 20, 1984.

Wald, Harkrader & Ross, Washington, D.C. (Christopher Dunn, William J. Clinton and William E. Shimer, Washington, D.C., of counsel), for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., and Velta A. Melnbrencis, New York City, for defendant.

Stewart & Stewart, Washington, D.C. (Eugene L. Stewart, Terence P. Stewart and James R. Cannon, Jr., Washington, D.C., Edwin Silverstone, New York City and Robert E. Walton, Washington, D.C., of counsel), for intervenor Smith-Corona Group, Consumer Products Division, SCM Corporation.

Tanaka, Walders & Ritger, Washington, D.C., (H. William Tanaka and Lawrence R. Walders, Washington, D.C., of counsel) for applicants to intervene Brother Industries, Ltd. and Brother International Corporation.

*Opinion and Order on Application for Intervention*

NEWMAN, Senior Judge:

*Introduction*

Brother Industries, Ltd. and Brother International Corporation (collectively "Brother")[1] seek leave to intervene in this action as a matter of right pursuant to 28 U.S.C. § 2631(j)(1)(B) and Rule 24(a)(1) of the Rules of the Court of International Trade. Attached to Brother's motion to intervene is a proposed complaint contest-

1. Brother Industries, Ltd. is a Japanese manufacturer of portable electric typewriters and Brother International Corporation is a related firm that imports such merchandise from Japan.

2. Accompanying Brother's motion for intervention is its motion for an injunction to prevent liquidation of all entries of Brother's PETs from

ing the application by the United States Department of Commerce, International Trade Administration ("ITA") of the exporter's sales price ("ESP") offset "cap" (19 CFR § 353.15(c)) in determining the foreign market value of Brother's portable electric typewriters ("PETs") from Japan in ITA's antidumping investigation. Brother seeks intervention solely for the purpose of enjoining liquidation of its entries of PETs pending a final decision in this case.[2]

The Government and Smith Corona Group, Consumer Products Division, SCM Corporation ("SCM") oppose Brother's motion to intervene. Silver Reed America, Inc. and Silver Seiko, Ltd. (collectively "Silver") have filed no response to Brother's motion.

*Background*

On March 21, 1980 ITA published its final affirmative determination of sales at less than fair value ("SLTFV") with respect to PETs from Japan exported by Brother Industries, Ltd., Silver Seiko, Ltd. and Nakajima All Co., Ltd. (45 Fed.Reg. 18416). Brother participated in the antidumping proceedings before ITA. On May 7, 1980 the United States International Trade Commission published its final affirmative injury determination respecting PETs from Japan (45 Fed.Reg. 30186). Subsequently, on May 9, 1980 ITA published an antidumping duty order (45 Fed.Reg. 30618).

Silver commenced this action on June 6, 1980 under section 516A(a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2), to contest ITA's final affirmative determination of SLTFV and antidumping duty order respecting PETs from Japan. Silver challenges ITA's determination primarily on the ground that the limi-

Japan covered by an antidumping duty order issued by ITA on May 9, 1980 (45 Fed.Reg. 30618), and entered or withdrawn from warehouse for consumption from January 4, 1980, when liquidation was first suspended, until and including the date of publication in the Federal Register of a notice of the final judgment in this action.

tation upon the ESP offset or "cap" in 19 CFR § 353.15(c) is invalid, and therefore, in comparing foreign market value with the exporter's sales prices, ITA erred in limiting the deduction of home market selling expenses in Japan to the amount of the selling expenses incurred in the United States market. SCM, the sole domestic manufacturer of PETs, has intervened in this action as a party defendant.

On February 1, 1984 this Court sustained Silver's challenge to the March 21, 1980 LTFV determination, holding invalid the ESP offset cap in 19 CFR § 353.15(c) and remanded to ITA for redetermination of the offset adjustment in accordance with the Court's decision. 7 CIT ——, 581 F.Supp. 1290. By order of March 9, 1984, this Court granted defendant's motion for a stay of the remand order of February 1, 1984 (581 F.Supp. 1290); and on March 16, 1984 granted SCM's motion for certification of the question of the validity of the ESP offset cap for an immediate appeal. Thereafter, on April 5, 1984 the Court of Appeals for the Federal Circuit ("CAFC") granted SCM permission to file an immediate appeal; and on April 17, 1984 an appeal was filed by SCM (CAFC Appeal No. 84–1118), which is now pending.[3]

Following its successful litigation on the merits in the instant case, the stay of the remand, and pending SCM's interlocutory appeal, Silver sought to enjoin liquidation of all its entries covered by the May 9, 1980 antidumping duty order from January 4, 1980 (the date liquidation was first suspended) to the date notice of this Court's final judgment is published or until final disposition of this case on appeal. On June 21, 1984 this Court issued an opinion and order granting Silver's motion for injunctive relief. 7 CIT ——, 590 F.Supp. 1254.

On September 27, 1984 Brother filed its motion to intervene in this action. As noted *supra*, Brother's motion is opposed by the Government and SCM, but Silver has taken no position respecting Brother's application.

## Contentions

Defendant argues: first, that the Court lacks jurisdiction to consider Brother's motion because this action is now pending before the CAFC; alternatively, defendant contends that even if this Court possesses jurisdiction, Brother's motion should be denied because it is untimely and would prejudice existing parties by enlarging the scope of the action.

Brother maintains that the Court possesses jurisdiction to permit intervention since the appeal to the CAFC is interlocutory and no final judgment has been entered in this case. Additionally, Brother emphasizes that pursuant to 28 U.S.C. § 2631(j)(1)(B) its intervention is a matter of right and must be granted, absent prejudice to the present parties. Brother insists that intervention at this juncture will not prejudice the parties to the litigation since no new issue has been raised by its proposed complaint.

The Court agrees with Brother's contentions, and its application to intervene is granted.

## Jurisdiction

As mentioned *supra*, defendant contends that this Court lacks jurisdiction to consider Brother's motion for intervention in light of the pendency of SCM's appeal in this action. In support of that contention, defendant cites, *inter alia, Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 927–929 (5th Cir.1983). There, the Court stated at 928:

This circuit follows the general rule that the filing of a valid notice of appeal *from a final order* of the district court divests that court of jurisdiction to act on the matters involved in the appeal, except to aid the appeal, correct clerical errors, or enforce its judgment so long as

---

**3.** On September 12, 1984 the briefing by all parties was completed and argument was heard by the CAFC on November 8, 1984.

the judgment has not been stayed or superceded. [Emphasis added.]

▉ A final order has not been issued in this case. SCM's appeal was filed in conformance with 28 U.S.C. § 1292(d)(1) which gives the CAFC jurisdiction of an appeal from an interlocutory order of this Court when such order includes "a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation." The foregoing statement was issued by this Court in response to SCM's request, and as previously mentioned, the CAFC granted SCM permission to file an interlocutory appeal.

Section 1292(d)(3) makes it clear that an interlocutory appeal does not divest the Court of International Trade of jurisdiction over further proceedings in the action. So far as pertinent, that subsection reads:

> (3) Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade * * *, unless a stay is ordered by a judge of the Court of International Trade or * * * by the United States Court of Appeals for the Federal Circuit or a judge of that court.

Thus, by the terms of the statute, the granting of SCM's interlocutory appeal did not stay proceedings in this Court or divest the Court of jurisdiction. Indeed, this Court's stay of proceedings in its order of March 9, 1984 concerned only the remand order of February 1, 1984 (581 F.Supp. 1290). Consequently, this Court concludes that it still retains jurisdiction in this case and may consider Brother's motion to intervene.

### Timeliness

Defendant contends that even if this Court has jurisdiction to consider Brother's motion, it should nevertheless deny the motion on the ground that it is not timely.

Initially, it should be observed that Brother has moved to intervene as a matter of right pursuant to 28 U.S.C. § 2631(j)(1)(B),[4] and the statute imposes no definitive deadline on intervention. Nonetheless, under Rule 24(a) of the Rules of the Court, an application to intervene as of right must be "timely", and "[t]imeliness is to be determined from all the circumstances". *NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1973).

In *Sumitomo Metal Industries, Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703, 707 (CCPA 1982), Judge Nies, writing for our Appellate Court, cogently enumerated the relevant factors which must be considered in determining whether an application for intervention is "timely":

(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene; [footnote omitted]

(2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention. [footnote omitted]

(3) existence of unusual circumstances militating either for or against a determination that the application is timely. [footnote omitted]

In *Sumitomo*, the Appellate Court further stressed that "[t]he question of timeliness is largely committed to the discretion of the trial court and will not be overturned unless it can be shown that that discretion was abused." *Id.* at 707, citing *NAACP v. New York*, 413 U.S. at 366, 93 S.Ct. at 2603.

Regarding the first of the three factors enumerated in *Sumitomo*, the Appellate Court noted: "In order to determine whether an application for intervention is timely, consideration must first be given to when

---

**4.** Brother was a party to the administrative proceeding before ITA which is under review in this action, and there is no dispute that Brother

has standing (*viz.,* is an "interested party") to intervene pursuant to § 2631(j)(1)(B).

the right to intervene actually arose. Timeliness must be judged from that date. * * * Under Rule 24(a)(1), a person's right to intervene arises upon institution of the proceeding". *Id.* at 707, 708.

In the present case, it is clear that Brother's statutory right to intervene has been present since the action was commenced by Silver. Brother does not dispute that it has been aware of the pendency of this action since its commencement by Silver in June 1980. As previously noted, Brother's motion to intervene was filed more than four years after its right to intervene arose and was known, after the stay of remand, and after the filing of an interlocutory appeal. Hence, it is plain that in terms of the passage of time and the present stage of the litigation, Brother's application comes very late indeed. "An application to intervene by a statutory right filed [more than four years] into a proceeding and after significant decisions have been rendered by the court, is not in a favorable posture to be granted. *However, even without any explanation for the delay, we would have to weigh the prejudice to the parties and consider any unusual circumstances which might lead to the conclusion that the motion for intervention must be granted.*" *Sumitomo, supra,* 669 F.2d at 708 (emphasis added).

### Prejudice

■■■ The question of whether an application for intervention is timely under Fed. R.Civ.P. 24 must be answered in light of all the relevant facts and circumstances of the particular case. *NAACP v. New York,* 413 U.S. at 366, 93 S.Ct. at 2603. Prejudice to existing parties to the litigation is "perhaps the most important factor in determining timeliness of [an application] to intervene

as of right." *Sumitomo,* 669 F.2d at 708–9, quoting from *Petrol Stops Northwest v. Continental Oil Co.,* 647 F.2d 1005, 1010 (9th Cir.1981). "Accordingly, the prejudice which existing parties to the litigation may suffer as a result of the would-be intervenor's failure to intervene when the right to intervene arose must be balanced against the prejudice the would-be intervenor may suffer if intervention is denied." *Sumitomo,* 669 F.2d at 709. Moreover, the timeliness requirement for intervention is not intended to punish an applicant for not acting more promptly, but rather is designed to insure that the original parties should not be prejudiced by the applicant's failure to apply sooner. *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065 (5th Cir.1970). Prejudice may well be the only significant consideration when the applicant seeks intervention of right, because intervention should be granted unless it would work a hardship on any of the existing parties. *McDonald v. E.J. Lavino, supra.*[5]

Defendant maintains that "granting Brothers' motion would clearly prejudice the United States because thereby this court would be permitting Brothers to enlarge the scope of this action to encompass Brothers' PETs." (Brief, at 8–9). In support of its position, defendant cites *Nakajima All Co., Ltd. v. United States,* 2 CIT 170 (1981), and *Fuji Electric Co., Ltd. v. United States,* 7 CIT ——, 595 F.Supp. 1152 (1984) for the proposition that "an intervenor should not be permitted to enlarge the scope of the existing action." (Mem. at 8–9). However, defendant's reliance upon *Nakajima All* and *Fuji* is misplaced, since those cases involved attempts by intervenors to enlarge the scope of the actions *by adding new issues,* and not an attempt to

---

5. Interestingly, relative to the Court's duty to consider whether intervention is prejudicial to the rights of the original parties, it is observed that in 28 U.S.C. § 2631(j)(2) Congress expressly referred only to "those civil actions in which intervention is *by leave of court.*" (Emphasis added.) The statute is silent on the matter of prejudice respecting cases where intervention is a *matter of right.* However, under Rule 24(a) the Court must consider whether an application

to intervene as of right is timely, and in that connection the Court must consider whether intervention would prejudice the rights of existing parties. *Sumitomo, supra.* Hence, despite the reference in section 2631(j)(2) to intervention "by leave of Court," we must consider the factor of prejudice to existing parties in cases where intervention is sought "as a matter of right."

merely enjoin liquidation of their entries, as Brother proposes to do here.

In *Nakajima All,* of critical importance, the intervenor attempted *to add a new issue* to the case by moving to amend its answer to interpose a cross-claim contesting ITA's failure to use the "constructed value" method of calculating foreign market value. The intervenor had raised, but subsequently abandoned, that issue in the administrative proceedings. This Court pointed out that the other parties to the action would be prejudiced if the intervenor were permitted to revive its contention respecting constructed value, which it had previously abandoned during the administrative proceedings. Additionally, this Court held that the intervenor could not circumvent the statutory time limitation for contesting an antidumping duty determination by simply making a cross-claim when the time for commencing an action had expired.

The current case, then, is readily distinguishable from *Nakajima All* since Brother is not seeking to litigate any issue that has not already been raised and litigated by the parties and decided by this Court. Consequently, the time limitation under section 1516a(a)(2) for contesting an antidumping duty determination, which would bar assertion of a distinctly new claim, is inapplicable to the claim made by Brother in its proposed complaint (*viz.,* invalidity of the ESP offset cap under 19 CFR § 353.15(c)).

It should also be pointed out that the circumstances in the present case are entirely unlike those presented in *Sumitomo, supra,* where intervention was denied because it probably would have resulted in setting aside an agreement that had been reached between the parties. 669 F.2d at 709.

And *Fuji* squarely supports Brother's contention. There, the Court refused to allow the intervenor to interpose five claims raising matters not previously set forth in the pleadings, but significantly, the Court granted the motion to intervene respecting four claims in the intervenor's complaint that were already before the Court, even though the motion to intervene was filed seven months after the date of publication of the administrative determination under review. The Court recognized that while interested parties have a right to appear and be heard, they may not do so in contravention of the time limitation imposed by the statutory provisions; and that after the expiration of the statutory time limitation in section 1516a, an intervenor "takes the action as it has been framed by the parties therein." 18 Cust.Bull. No. 21, at p. 40 (May 23, 1984).

The short of the matter is that in *Nakajima All* and *Fuji* the Court refused to enlarge the scope of the existing action to the extent that new issues were sought to be raised after the expiration of the time period prescribed by 19 U.S.C. § 1516a for commencing an independent action.[6] In this case, Brother seeks merely to take the action as it has been framed by the present parties, and does not seek to raise any new issue whatever. An examination of Brother's proposed complaint discloses that the only issue raised is the validity of the ESP offset cap. But that issue has already been decided by this Court, and Brother does not propose to relitigate that issue. Brother seeks intervention in this action solely for the purpose of enjoining liquidation of its entries pending a final decision in this case.

■ Since Brother does not seek intervention for the purpose of setting aside the results of this litigation or raising a new issue, this Court sees no prejudice to the present parties simply because injunctive

---

6. The distinction between intervention and institution of an independent action was clearly delineated in *Ceramica Regiomontana, S.A. and Industrias Intercontinental, S.A. v. United States,* 7 CIT ——, 590 F.Supp. 1260 (1984). While an interested party to the administrative proceeding frequently has an option to commence an independent action or intervene in an existing action, the intervention route after the time has expired under 19 U.S.C. § 1516a to commence an independent action has implications respecting the issues the intervenor may raise, as is illustrated by *Fuji.*

852

relief would make Brother's entries subject to liquidation in accordance with the final decision in this case. *See* 19 U.S.C. § 1516a(c). To the extent that intervention by Brother would simply add an additional party plaintiff to this action *without raising any new claims or issues,* there is no enlargement of the action in contravention of section 1516a. *See Fuji, supra.*

Notwithstanding Brother's long delay in seeking intervention in this case, and the present stage of this litigation, the Court finds no prejudice to the present parties under the circumstances presented. On the other hand, Brother could be subject to substantial prejudice if its motion to intervene is denied. ITA applied the ESP offset cap to Brother's entries of PETs as well as to Silver's entries. If the Court of Appeals affirms this Court's decision, the offset cap will be invalid as a matter of law. Nevertheless, all entries of Brother's PETs that are entered or withdrawn from warehouse for consumption prior to publication of the Court of Appeals decision will be liquidated in conformance with the administrative determination unless liquidation is enjoined by this Court. 19 U.S.C. § 1516a(c). *Cf. Rhone Poulenc, S.A. v. United States,* 7 CIT —, 583 F.Supp. 607 (1984) (Court permitted amendment of complaint challenging ESP offset cap, expressing concern regarding the application of a possibly invalid regulation and the harm that could cause to plaintiff).

Under all the facts and circumstances in this case, it is ordered that Brother's motion to intervene is granted.