**SILVER REED AMERICA, INC. and Silver Seiko, Ltd., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Smith-Corona Group, Consumer Products Division, SCM Corporation, Intervenor.**

**Court No. 83–10–01522.**

United States Court of International Trade.

Jan. 4, 1985.

Wald, Harkrader & Ross, Washington, D.C. (Christopher Dunn, William J. Clinton and William E. Shimer, Washington, D.C., of counsel), for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., and Velta A. Melnbrencis, New York City, for defendant.

Stewart & Stewart, Washington, D.C. (Eugene L. Stewart, Terence P. Stewart and James R. Cannon, Jr., Washington, D.C., Edwin Silverstone, New York City, and Robert E. Walton, Washington, D.C., of counsel), for intervenor Smith-Corona Group, Consumer Products Division, SCM Corporation.

Tanaka, Walders & Ritger, Washington, D.C. (H. William Tanaka and Lawrence R. Walders, Washington, D.C., of counsel), for applicants Brother Industries, Ltd. and Brother International Corporation.

BERNARD NEWMAN, Senior Judge:

### Introduction

Brother Industries, Ltd. and Brother International Corporation (collectively "Brother")[1] seek intervention as a matter of right in accordance with 28 U.S.C. § 2631(j)(1)(B) and Rule 24(a)(1) of the rules of the Court. Annexed to Brother's motion

---

1. Brother Industries, Ltd. is a Japanese manufacturer of portable electric typewriters and Brother International Corporation is a related firm that imports such merchandise from Japan.

to intervene is a proposed complaint contesting the final determination of the United States Department of Commerce, International Trade Administration (ITA) in its administrative review pursuant to section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675 (section 751), of the antidumping duty order covering portable electric typewriters (PETs) from Japan. 48 Fed.Reg. 40761 (September 9, 1983).[2] Specifically, Brother claims that ITA erred in its administrative review by applying the exporter's sales price (ESP) "offset cap" of 19 CFR § 353.15(c) in determining the foreign market value of Brother's PETs. Brother now seeks to intervene "for the limited purpose of obtaining an injunction against liquidation of its entries pending a final decision on the validity of the ESP offset cap and for redetermination of its [sic] foreign market value if the ESP offset cap is finally held to be invalid." Brother's motion at 4.

The Government and Smith-Corona Group, Consumer Products Division, SCM Corporation (SCM) oppose Brother's application, while Silver Reed America, Inc. and Silver Seiko, Ltd. (collectively "Silver")[3] have not responded to Brother's application.

### Background

On September 9, 1983 ITA published the final results of its administrative review conducted pursuant to section 751 covering PETs from Japan exported to the United States by Brother Industries, Ltd., Silver Seiko, Ltd. and Nakajima All Co., Ltd. (Nakajima), 48 Fed.Reg. 40761. Brother participated in the section 751 review proceedings before ITA.

Silver commenced an action on October 11, 1983 under Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. § 1516a(a)(2)(B)(iii), con-

testing the results of ITA's section 751 review in several respects. Included in Silver's complaint is the claim that in calculating foreign market value, ITA erred by limiting the deduction of home market selling expenses to the amount of selling expenses in the United States pursuant to the ESP "offset cap" in 19 CFR § 353.15(c). Silver contends that the offset cap prescribed by the regulation is invalid.

Silver raised the same issue respecting the validity of the offset cap in an earlier action, Court No. 80–6–00934, contesting ITA's final affirmative determination of sales at less than fair value and the antidumping duty order covering PETs from Japan (*Silver I*). In *Silver Reed America, Inc. v. United States*, 7 CIT ——, 581 F.Supp. 1290 (1984), *CAFC Appeal No. 84–1118 pending*, this Court sustained Silver's contention finding the ESP offset cap invalid and remanded to ITA for redetermination of the offset adjustment in conformance with the Court's decision. By order of March 9, 1984 this Court granted defendant's motion for a stay of the remand, and on March 16, 1984 granted SCM's motion for certification of the ESP offset cap question for immediate appeal. Thereafter, on April 5, 1984 the Court of Appeals for the Federal Circuit granted SCM permission to file an immediate appeal; on April 17, 1984 SCM filed its appeal (CAFC Appeal No. 84–1118), which is now pending.[4]

Following successful litigation on the merits in *Silver I*, the stay of the remand, and pending SCM's appeal, Silver sought to enjoin liquidation of its entries covered by the May 9, 1980 antidumping duty order from January 4, 1980 (the date liquidation was first suspended) to the date notice of this Court's final judgment in that action is published or until final disposition on appeal. In due course, Silver's motion for

---

2. In addition, Brother has filed a motion to enjoin liquidation of all entries of its PETs covered by ITA's final results until publication in the Federal Register of a notice of the final judgment in this action.

3. Silver Seiko, Ltd. is a Japanese manufacturer of PETs and Silver Reed America, Inc. is its wholly owned subsidiary in America that imports such merchandise from Japan.

4. Oral argument was heard by the CAFC on November 8, 1984.

injunctive relief was granted by opinion and order dated June 21, 1984. 7 CIT —, 590 F.Supp. 1254. On September 27, 1984 Brother moved to intervene in *Silver I* for the sole purpose of seeking to enjoin liquidation of its entries—the very reason that Brother has given in its present application. Recently, on December 20, 1984, this Court granted Brother's application to intervene in *Silver I.* 7 CIT —, 600 F.Supp. 846.

SCM commenced its own action, Court No. 83–10–01463, to contest the results of ITA's section 751 review of the antidumping duty order covering PETs from Japan. The gravamen of SCM's complaint is that ITA erred in permitting adjustments for differences in circumstances of sales notwithstanding information that differences in prices in the United States and Japanese markets were not due to the claimed differences in circumstances of sale. Consequently, it is SCM's contention that ITA's determination was contrary to section 773(a)(4) of the Act, 19 U.S.C. § 1677b(a)(4) and 19 CFR § 353.15(a).

On December 14, 1983 Brother moved to intervene in SCM's action on the side of the Government to defend ITA's final results against the allegations in SCM's complaint to the extent that those alleglions affected Brother's PETs. Significantly, as more fully discussed below, Brother intervened in SCM's action well after the thirty days within which it could have challenged ITA's final results of September 9, 1983 had it contested those results in its own case under section 516A(a)(2), 19 U.S.C. § 1516a(a)(2). Hence, in SCM's action Brother did not—and could not—raise any issue respecting the ESP offset cap question which was not then raised by the existing parties. By order of January 5, 1984 Brother's motion to intervene in SCM's action was granted. Silver and Nakajima similarly intervened in SCM's case to uphold ITA's final results.

On November 28, 1983 Silver moved to consolidate SCM's action, Court No. 83–10–01463, with its own action, Court No. 83–10–01522. Silver's motion was granted on December 20, 1983 and both actions challenging the results of ITA's section 751 review are *sub judice* in Consolidated Court No. 83–10–01522.

By its motion of September 27, 1984, presently before the Court, Brother now seeks intervention in Silver's action. As noted above, Brother's application is opposed by defendant and SCM. Silver has not responded to Brother's application.

## Contentions

Defendant argues that Brother's motion should be denied because it is untimely and would prejudice the existing parties by enlarging the scope of the action to encompass entries of Brother's PETs. Moreover, defendant insists that Brother's proposed claim concerning the validity of the offset cap is barred since Brother failed to institute its own action contesting ITA's final results within the thirty day period provided by 19 U.S.C. § 1516a(a)(2). Lastly, defendant asserts that Brother has already intervened in the consolidated action on the side of the Government in defense of ITA's final results and must now be deemed to have waived its ground for challenging ITA's determination.

SCM agrees with defendant that Brother's motion should be denied to the extent that Brother seeks to extend the scope of the action to encompass entries of Brother's PETs not currently at issue.

Brother insists that its intervention under 28 U.S.C. § 2631(j)(1)(B) is a matter of right and must be granted absent prejudice to the present parties. Further, Brother maintains that intervention at this point will not prejudice the parties since no new issues are raised by its proposed complaint and because Brother does not seek to otherwise interfere with the progress of this case.

For the reasons that follow, Brother's motion to intervene is granted.

## Discussion

As mentioned above, defendant contends that Brother's motion should be denied as untimely. In this connection, defendant

points up that Brother's motion was brought more than an entire year after the publication of ITA's final results that are challenged here.

Initially, it should be noted that Brother has moved to intervene as a matter of right pursuant to 28 U.S.C. § 2631(j)(1)(B)[5] and that statute imposes no definitive deadline on intervention. Nevertheless, under Court of International Trade Rule 24(a), an application to intervene as of right must be "timely", and "[t]imeliness is to be determined from all the circumstances". *NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1972).

Brother's application finds support in *Sumitomo Metal Industries, Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703 (CCPA 1982) where Judge Nies writing for our Appellate Court observed that:

> [P]rejudice to existing parties to the litigation is "perhaps the most important factor in determining timeliness of [an application] to intervene as of right." *Petrol Stops Northwest v. Continental Oil Co.*, 647 F.2d 1005, 1010 (CA 9, 1981). *Accord, McDonald v. E.J. Lavino Co.* [430 F.2d 1065, 1072 (CA 5, 1970)]. Accordingly, the prejudice which existing parties to the litigation may suffer as a result of the would-be intervenor's failure to intervene when the right to intervene arose must be balanced against the prejudice the would-be intervenor may suffer if intervention is denied.

669 F.2d at 708–9.

■ Moreover, the timeliness requirement for intervention is not intended to punish an applicant for not acting more promptly, but rather is designed to insure that the original parties are not prejudiced by the delay. *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065 (5th Cir.1970).

As illustrated by *Sumitomo, supra,* the fact that Brother seeks to intervene more than one year from the publication of ITA's results, in and of itself, will not serve to bar Brother's application as untimely without first considering the question of prejudice to the existing parties. Relative to that question, the rationale in this Court's recent opinion in *Silver Reed America, Inc. v. United States*, 7 CIT ——, 600 F.Supp. 846 (1984) is fully applicable here.

In an apparent attempt to demonstrate prejudice, defendant and SCM urge that Brother is now seeking by intervention to enlarge the scope of Silver's action to include Brother's own entries in contravention of the thirty day period provided by 19 U.S.C. § 1516a(a)(2) for instituting an independent action.

■ In essence, then, the question posed is whether Brother was required to institute an action of its own challenging ITA's final results or whether Brother has the right to intervene in *Silver's* action. The short answer is that Brother's right under 28 U.S.C. § 2631(j)(1)(B) to intervene in Silver's action contesting the results of the section 751 review is separate and distinct from any right it may have had to initiate its own independent action.

The distinction between intervention and the institution of an independent action was clearly delineated in *Ceramica Regiomontana, S.A. and Industrias Intercontinental, S.A. v. United States, et al.*, 7 CIT ——, 590 F.Supp. 1260 (1984) where the Court stated:

> Congress, in enacting the Trade Agreements Act of 1979 and the Customs Courts Act of 1980, provided interested parties, who participated in the administrative proceeding below, with *two separate and distinct rights* to challenge the results of that proceeding. First, an aggrieved interested party may file a summons with this Court thereby commencing its own independent action pursuant to 19 U.S.C. § 516A(a) [sic] and 28 U.S.C. § 1581(c). Second, an aggrieved interested party may await the institution of a lawsuit by another interested party, and

---

5. Brother, as noted *supra,* was a party to the administrative proceeding before ITA, which is under review in this action, and Brother's standing as an "interested party" pursuant to 28 U.S.C. § 2631(j)(1)(B) is not disputed.

then seek to intervene as a matter of right under 28 U.S.C. § 2631(j)(1)(B) and Rule 24(a)(1).

7 CIT at ——, 590 F.Supp. at 1264 (emphasis added).

Continuing, in *Ceramica* it was noted that "in view of the clear Congressional intent, this court cannot mandate that an aggrieved interested party must institute its own action rather than seek to intervene." *Id.* at ——, 590 F.Supp. at 1265.

*Ceramica* establishes that Brother was not limited to the filing of its own action under section 516A to contest ITA's final results of its administrative review. Brother also has a separate and independent right to challenge ITA's determination by timely intervention under 28 U.S.C. § 2631(j)(1)(B) and Rule 24(a)(1), for which there is no deadline as long as there is no prejudice to the parties already in the action.

Defendant's reliance upon *Nakajima All Co., Ltd. v. United States, et al.,* 2 CIT 170 (1981) and *Fuji Electric Co., Ltd., et al. v. United States,* 7 CIT ——, 595 F.Supp. 1152 (1984) is misplaced. Unlike the intervenors in those cases, Brother does not seek to raise any issue that is not already before the court.

In *Nakajima,* the Court found that the existing parties to the litigation would be prejudiced if the intervenor were permitted to revive the constructed value claim it had previously abandoned during the administrative proceedings. By sharp contrast, the ESP offset cap issue is already at issue in Silver's case.

*Fuji* similarly supports Brother's position. There, the Court refused to allow the intervenor to raise five claims involving matters that had not previously been presented by the existing parties. Significantly, however, the Court granted the motion to intervene with respect to four other claims in the intervenor's complaint which were already before the Court, even though the motion to intervene was filed seven months after the date of publication of the determination—well after the thirty day limitation of section 516. The Court held: "Accordingly, Hitachi appearing as intervenor, *takes the action as it has been framed by the parties therein.* It appears Hitachi may intervene as a matter of right, and accordingly that portion of said motion is granted." 7 CIT at ——, 595 F.Supp. at 1154 (emphasis added).

Here also, Brother simply seeks to take the action as it has been framed by the present parties. It bears repetition to state that Brother does not seek to raise any new issues.

Defendant's and SCM's contentions that Brother impermissibly seeks to extend the scope of this action to encompass entries of Brother's PETs are plainly without merit. Unlike the circumstances in *Nakajima* and *Fuji,* where the Court refused to enlarge the scope of the existing action to the extent *new issues* were sought to be raised after the expiration of the time period prescribed by section 516A, Brother's proposed complaint here raises only the ESP offset cap question which, as we have seen, is already the subject of Silver's action. Obviously then, Brother does not seek to enlarge the scope of Silver's action by adding *new issues,* but rather merely seeks to enjoin liquidation of their entries. *See* this Court's recent opinion in *Silver I; Silver Reed America, Inc. and Silver Seiko, Ltd. v. United States,* 7 CIT ——, 600 F.Supp. 846 (1984).

■ The present parties to this litigation would in no way be prejudiced by Brother's intervention since Brother does not seek to raise any new issues or to otherwise interfere with the progress of the litigation. If Brother's motion for intervention and motion for injunction are granted, the sole result would be to preserve the *status quo* with respect to Brother's PETs so as to prevent the assessment of antidumping duties on the basis of a possibly invalid regulation.

■ Defendant argues, that by intervening in *SCM's case* (Court No. 83–10–01463), Brother has already intervened in the *consolidated action* and is therefore barred from intervening "more than once in what

858

has become, through consolidation, one action." Defendant's brief at 9. Importantly, however, defendant offers no authority for its view that SCM's and Silver's cases have merged into "one action" through their consolidation. On the contrary, research reveals an absence of authority in support of defendant's contention. The teaching of the Supreme Court on this point is that consolidation "does not merge the suits into a single cause, change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Ry.*, 289 U.S. 479, 496, 53 S.Ct. 721, 727, 77 L.Ed. 1331 (1933). The Court concludes, therefore, that Brother's prior intervention in SCM's action and does not bar its present application.

 Turning to defendant's waiver contention, it is true that Brother has intervened in SCM's action (Court No. 83–10–01463) on the side of the Government in defense of ITA's final results. But, as noted *supra*, SCM's action does not concern the ESP offset cap of 19 CFR § 353(c). Since Brother's intervention in SCM's action came well after the thirty days within which it could have brought its own action contesting ITA's final results under section 516A, Brother could not assert its present claim concerning the validity of the offset cap in SCM's case. The fact that Brother previously intervened in SCM's action to defend ITA's final results of its section 751 review does not constitute a waiver of Brother's right to intervene in Silver's action challenging the validity of the ESP offset cap since consolidation does not merge the two actions. *Johnson v. Manhattan Ry., supra.*

### Conclusion

Notwithstanding Brother's delay in excess of one year in seeking intervention, this Court finds no prejudice to the present parties by granting Brother's application under the circumstances presented. On the other hand, Brother could be irreparably prejudiced if its motion to intervene is denied. If the CAFC affirms this Court's decision in *Silver I*, the offset cap will be invalid as a matter of law. Nevertheless, all entries of Brother's PETs that are entered or withdrawn from warehouse for consumption prior to the publication of the CAFC's decision will be liquidated in accordance with ITA's final results unless liquidation is enjoined by this Court. 19 U.S.C. § 1516a(c). *See* 7 CIT at ——, 600 F.Supp. at 852.

After considering all the circumstances presented, it is ordered that Brother's motion to intervene is granted.