**SUMITOMO METAL INDUSTRIES, LTD., Appellant,**

v.

**BABCOCK & WILCOX CO., and The United States, Appellees.**

**Appeal No. 81–35.**

United States Court of Customs and Patent Appeals.

Jan. 21, 1982.

Charles R. Stevens, Milo G. Coerper and Jerry L. Siegel, Washington, D. C., and New York City, for appellant.

Stephen M. Creskoff, Brian E. McGill, Washington, D. C., for appellee Babcock & Wilcox.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, New York City, and Francis J. Sailer, Washington, D. C., for appellee United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

NIES, Judge.

This appeal is from two orders of the United States Court of International Trade dated September 18, 1981, and October 5, 1981, denying Sumitomo Metal Industries, Ltd., (SMI) leave to intervene as a matter of right under 28 U.S.C. § 2631(j)(1)(B). We affirm.

*International Trade Commission Proceedings*

Babcock & Wilcox Co. (B&W), a domestic producer of steel pipes and boiler tubes, filed petitions on February 28, 1980, with the Department of Commerce (Commerce) and the International Trade Commission (Commission), alleging that certain steel pipes and tubes imported from Japan were being sold to United States importers at less than fair value by SMI and another foreign producer in contravention of the antidumping provisions of the Trade Agreements Act of 1979, Pub.L.No.96–39, 93 Stat. 144 (1979). The particular complaint considered here is the fourth in a series of unsuccessful attempts since August 23, 1979, by B&W to secure sanctions against such imports.

The Commission determined that of the four products subject to investigation (i.e., three seamless pipe and tube products and one welded pipe and tube product), only with respect to the welded product was there a reasonable indication of material injury to the domestic industry producing a like product. With respect to the three

seamless products, the Commission, by a 3–2 vote, determined that there was no reasonable indication of material injury or the threat of material injury to the domestic industry producing a like product, thus terminating that portion of the antidumping investigation. 45 Fed.Reg. 27581 (1980).[1] After receiving corrected data which revealed a decline in imports of welded products, the Commission made a negative determination with respect to welded products as well. 45 Fed.Reg. 47769 (1980).

*Proceedings in the Court of International Trade*

On May 5, 1980, B&W commenced an action against the United States in the Customs Court (now the Court of International Trade) in accordance with 19 U.S.C. § 1516a, seeking judicial review of the Commission's negative injury determination regarding the seamless products. On July 25, 1980, B&W instituted a second action seeking judicial review of the negative injury determination regarding the welded product. The two actions were consolidated as Court of International Trade Consolidated Civil Action No. 80–5–00772.

By order entered July 16, 1980, SMI was granted leave to appear as *amicus curiae* supporting the Government's position.

Following various procedural motions, B&W filed a motion in the consolidated action for "review of administrative determination upon an agency record" and the Government cross-moved for affirmance of the Commission's determinations. SMI filed briefs *amicus curiae.* These cross-motions were ruled upon in Slip Op. 81–75.[2] In an accompanying order dated August 20, 1981 [the August 20, 1981 decision and ac-

companying order are hereinafter referred to as "Slip Op. 81–75"], the court remanded the case to the Commission, ordering it both to reopen its investigation, which had treated the seamless products as a single industry, and to attempt to obtain discrete information on the three seamless product lines separately (or formally determine that such information was unavailable) in order that the court would have such findings in the record in deciding the appeal. The order also set aside the Commission's negative injury determination with respect to the importation of the welded pipe and tube product.

On September 15, 1981, SMI applied to intervene pursuant to Rule 24(a),[3] relying on the statutory right to intervene given to a person who would be adversely affected or aggrieved by a decision in an action pending in the Court of International Trade under 28 U.S.C. § 2631(j)(1)(B). SMI sought intervention for the purpose of seeking rehearing of Slip Op. 81–75 in its entirety or, in the alternative, to seek appellate review thereof. At the same time SMI filed a motion for rehearing of Slip Op. 81–75,[4] apparently on the assumption that its motion to intervene would be granted pro forma. By order of September 18, 1981, SMI was denied leave to intervene. No action was specifically taken on its motion for rehearing.

Thereafter, B&W and the United States filed a joint motion seeking the suspension of all judicial and administrative proceedings pending the filing of a new antidumping petition by B&W and the institution by Commerce of a new antidumping investigation covering steel pipe and tube products from Japan.

---

1. Investigation No. 731–TA–15 (Preliminary).

2. As part of this opinion the court ruled that the Commission had failed to give consideration to product-specific profit data in defining the relevant domestic industry or industries.

3. Rule 24(a) of the Rules of the United States Court of International Trade [hereinafter "Rule 24(a)"]. Note that the language of Rule 24(a), quoted infra, is identical to Fed.R.Civ.P. 24(a). Accordingly, we may look to cases construing the Federal rule to aid us here.

4. The Government also moved for rehearing but limited its request to modification of that portion of Slip Op. 81–75 dealing with the welded products. The Government, in its motion, specifically noted that "[b]y limiting this motion for rehearing to this aspect of the Court's opinion and order we do not concede the correctness of the remainder of the Court's holdings in Slip Op. 81–75."

The motion for rehearing and modification was denied.

Attached to the joint motion was a stipulation between B&W and the United States pursuant to which, inter alia, the parties agreed to a dismissal of the pending proceedings before the Court of International Trade upon the institution of a new antidumping investigation by Commerce. In addition, B&W and the United States stipulated that upon the Court of International Trade's dismissal of Consolidated Civil Action No. 80–5–00772 (assuming a new proceeding is instituted by Commerce), they will jointly move the Court of International Trade for an order vacating Slip Op. 81–75.

Upon learning of the joint motion, on October 1, 1981, SMI filed a motion for reconsideration of the order denying intervention. As added grounds, SMI asserted it wished to oppose the joint motion. SMI's motion was denied October 5, 1981.[5] The joint motion was granted October 7, 1981, on condition that within 90 days B&W file a new petition acceptable to Commerce.

SMI appeals the lower court's denial of intervention.[6] Without the status of an intervenor, SMI is unable to seek rehearing by the court below of Slip Op. 81–75 and the order granting the joint motion and/or appellate review by this court of these orders.

On October 27, 1981, this court stayed the order in Slip Op. 81–75 and the order granting the joint motion pending this appeal.

In view of our holding, these stays are lifted.

## The Decision of the Court of International Trade Denying Intervention

The Court of International Trade denied SMI leave to intervene on two grounds. First, the court viewed the language of 28 U.S.C. § 2631(j)(1)(B)[7] as allowing intervention only if SMI had applied "*before* the court's decision [in Slip Op. 81–75] was rendered." [Emphasis in original.] The court, thus, held that SMI's application for intervention was untimely as it was filed more than 16 months after the proceedings began, and after Slip Op. 81–75 was rendered. Second, the court below held that SMI "waived any right it would otherwise have had to intervene" by participating in the capacity of *amicus curiae*.

## OPINION

On appeal SMI maintains that, given a statutory right to intervene, that right may be exercised whenever its interests are no longer adequately represented by a party to the litigation.[8] This position must fail. SMI is not measuring timeliness based on the statutory right from the proper point of reference—SMI seeks to eliminate a time gap rather than to justify it. In any event, we do not agree that its interests are no longer adequately represented. *See* n. 17, infra.

---

5. The order of Oct. 5, 1981, specifically denies the motion by SMI for rehearing of Slip Op. 81–75, and also generally denies SMI's motions for "other relief." The parties have treated the then-pending motion for reconsideration on the matter of intervention as denied by this order.

6. SMI filed a notice of appeal on September 25, 1981, for review of the denial of intervention. Thereafter, on October 13, 1981, SMI filed an amended notice of appeal to include the denial of its motion for reconsideration thereof.

7. The pertinent portion of 28 U.S.C. § 2631(j)(1)(B) reads:

(j)(1) Any person who *would be adversely affected or aggrieved* by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action, except that—
* * *

(B) in a civil action under section 516A of the Tariff Act of 1930 [19 U.S.C. § 1516a], only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right; [Emphasis added.]

No challenge is made to SMI's status as an interested party as defined therein. SMI was named in B&W's antidumping petition and participated in the Commission proceedings.

8. As a preliminary matter, we note that an appeal will lie from a denial of an application to intervene as of right. *See*, e.g., *Cascade National Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967); *Petrol Stops Northwest v. Continental Oil Co.*, 647 F.2d 1005, 1009 (CA 9 1981); *Reedsburg Bank v. Apollo*, 508 F.2d 995, 997 (CA 7 1975).

*Two Rights, Not One*

Rule 24(a) provides:

(a) **Intervention of Right**. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ It is apparent that Rule 24(a) embodies not one, but two rights of intervention. Rule 24(a)(1) deals with an express statutory right, an unconditional right to intervene. Rule 24(a)(2) deals with a right to intervene, not expressly provided by statute, but nevertheless, intervention as of right rather than as a permissive matter, the latter covered by Rule 24(b). Different considerations flow not only from Rule 24(a) and Rule 24(b) but also from the different provisions within Rule 24(a).

Thus, where a proposed intervenor contends that intervention is of right under a particular part of Rule 24(a), courts have been careful to note that intervention as of right under another part of Rule 24(a) is not asserted. *See, e.g., Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 144, 87 S.Ct. 932, 941, 17 L.Ed.2d 814 (1967) (Stewart, J., dissenting); *Illinois v. Outboard Marine Corp.*, 619 F.2d 623, 630–32 (CA 7 1980), *vacated on other grounds*, 453 U.S. 917, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1981); *Mir v. Smith*, 521 F.Supp. 446, 448 (N.D.Ga.1981).

So far as we are aware, this case is one of first impression. We have not been cited to, nor have we found, any case ruling on whether a motion to intervene under Rule 24(a)(1) was untimely.

*Timeliness Factors*

■ The question of timeliness is largely committed to the discretion of the trial court and will not be overturned unless it can be shown that that discretion was abused. *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). In passing upon the timeliness of applications, the following factors must be weighed: [9]

(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene; [10]

(2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention.[11]

(3) existence of unusual circumstances militating either for or against a determination that the application is timely.[12]

*The Time Trigger*

■ In order to determine whether an application for intervention is timely, consideration must first be given to when the right to intervene actually arose. Timeliness must be judged from that date. It is this initial determination that differs markedly between Rule 24(a)(1) and Rule 24(a)(2).

■ Under Rule 24(a)(1), a person's right to intervene arises upon institution of the

---

**9.** *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 263-66 (CA 5 1977); *See also* Note, *The Timeliness Threat to Intervention of Right*, 89 Yale L.J. 586, 593–94, n.40 (1980).

**10.** *Piambino v. Bailey*, 610 F.2d 1306, 1320 (CA 5), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980); *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (CA 9) (per curiam), *cert. denied*, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978).

**11.** *Stallworth v. Monsanto Co.*, supra at 265–66; *Piambino v. Bailey*, supra at 1320–21; *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1072 (CA 5 1970); *Usery v. Brandel*, 87 F.R.D. 670, 674–75 (W.D.Mich.1980).

**12.** *Piambino v. Bailey*, supra.

proceeding. Under Rule 24(a)(2), the right arises when at least a minimal showing can be made that a person's interest is no longer being adequately represented. *Trbovich v. UMW*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10, 30 L.Ed.2d 686 (1972); *United States v. Marion County School District*, 590 F.2d 146, 148 (CA 5 1979).[13]

Accordingly, the timeliness of a motion to intervene must be judged from different times in the course of a proceeding, depending on whether the right of intervention is asserted under Rule 24(a)(1) or Rule 24(a)(2).

SMI asks us to measure timeliness in connection with its statutory right under 28 U.S.C. § 2631(j)(1)(B) from the time the Government allegedly no longer adequately represented its interests. As indicated, under Rule 24(a)(2) that is the trigger which activates the time clock. However, SMI's statutory right to intervene has been present since proceedings were instituted. Thus, in considering the timeliness of SMI's motion under Rule 24(a)(1), the inquiry must focus on when SMI became aware or should have been aware of the *proceeding*.

In court proceedings involving review of antidumping petitions, the complainant (here B&W) is required by law to notify all "interested parties" (here SMI, inter alia) of the filing of the action. 19 U.S.C. § 1516a(d). SMI does not dispute that it has been aware of the pendency of the proceeding below since its inception in May 1980.[14]

SMI's motion to intervene was filed on September 15, 1981, more than 16 months after its right to intervene arose and was known. What prompted SMI to take action was not Slip Op. 81–75 itself but the decision by the Government not to ask rehearing on Slip Op. 81–75 in its entirety. Slip Op. 81–75 did not terminate the case. It was interlocutory. Had SMI promptly exercised its statutory right, it would have been entitled to control such strategic decisions as requesting rehearing and attempting to appeal an interlocutory decision. We do not accept the proposition that a statutory right allows a potential party to sit by and, in the event of a choice of procedural tactics by the laboring party not to its liking, force the court to reconsider matters otherwise settled. Such a right may not be exercised in a fashion which encompasses "Heads I win, tails you lose" tactics.[15] We also do not agree with SMI that the courts should be particularly lenient in considering the timeliness of a request to intervene based on a statute. On the contrary, the quid pro quo for this right being unconditional is that it must be exercised promptly.

■■ An application to intervene by statutory right filed 16 months into a proceeding and after significant decisions have been rendered by the court is not in a favorable posture to be granted. However, even without any explanation for the delay, we would have to weigh the prejudice to the parties and consider any unusual circumstances which might lead to the conclusion that the motion for intervention must be granted.

*The Prejudice Factor*

Where intervention as of right is raised, there is usually a greater risk of harm to the would-be intervenor than in permissive intervention situations under Rule 24(b). Thus, trial inconvenience itself is not sufficient reason to reject as untimely an application to intervene as of right.[16] On the other hand, prejudice to existing parties to the litigation is "perhaps the most important factor in determining timeliness of [an

---

**13.** *See also, Piambino v. Bailey, supra.*

**14.** In any event, SMI's participation as *amicus* since July 1980 leaves no doubt that SMI was well aware of the activity in the Court of International Trade at an early stage.

**15.** Some courts have referred to this tactic as the "free ride theory." Intervention during a proceeding must, however, be contrasted with

the right to intervene under Rule 24(a)(2) if an adverse decision is not appealed by the parties. *Compare McDonald v. E.J. Lavino, supra, with Legal Aid Society v. Dunlop*, 618 F.2d 48 (CA 9 1980).

**16.** *See McDonald v. E.J. Lavino, supra* at 1073, and authorities cited therein.

application] to intervene as of right." *Petrol Stops Northwest v. Continental Oil Co.*, 647 F.2d 1005, 1010 (CA 9 1981). *Accord, McDonald v. E.J. Lavino, supra.* Accordingly, the prejudice which existing parties to the litigation may suffer as a result of the would-be intervenor's failure to intervene when the right to intervene arose must be balanced against the prejudice the would-be intervenor may suffer if intervention is denied.

SMI asserts that it will be prejudiced by (a) foreclosure of any opportunity for appellate review of Slip Op. 81–75 reversing the Commission's ruling in favor of SMI because of the joint motion, (b) a continuing detrimental impact upon SMI's ability to conduct its domestic business operations and to price accurately and to sell its products in the United States during the course of proceedings, and (c) the burdensome expense and effort of defending against another B&W petition.

■■ Concerning the first, SMI's argument is that it is more advantageous to its interests to have Slip Op. 81–75 reversed on appeal than mooted. With respect to its effect on the existing proceeding, we cannot agree. The termination of the appeal which leaves the negative injury determination by the Commission intact does not prejudice SMI. Moreover, in the event the settlement is not effected, Slip Op. 81–75 will ultimately be reviewable by this court as part of these proceedings. The Government has declared, and SMI concedes, that the Government did not waive any right to appeal Slip Op. 81–75 and, indeed, reserved that right pending a final disposition of the case by the court below.[17]

■ SMI's further assertion, that Slip Op. 81–75 after being vacated will, nevertheless, influence the Commission in its determinations in other cases, may be correct. We do not agree that an effect on other investigations establishes a right of inter-

vention under the statute in this proceeding. As far as this proceeding is concerned, the matter will become moot.

The second and third factors alleged as prejudice, namely, the uncertainty in pricing its products and the possibility of having to defend against another B&W petition, can be answered readily. Dumping proceedings in no way inhibit fair marketing practices. With respect to other petitions, it is sufficient answer that any U.S. industry has a statutory right to file an antidumping petition at any time. 19 U.S.C. § 1673a(b). That SMI must accept uncertainty results from the statute protecting U.S. industry, not from the decision below.

The prejudice to the existing parties to the litigation is obvious. If SMI is allowed to intervene, the probability of getting its consent to possible settlement appears highly unlikely and the agreement worked out between the parties would, in any event, have to be set aside. Accordingly, the prejudice factor weighs in favor of the denial of intervention.

*Unusual Circumstances Factor*

■ Considering the time during which SMI chose not to intervene, and the prejudice to existing parties were SMI permitted to do so, we conclude that SMI was properly denied intervention absent some unusual circumstances compelling a contrary ruling.

■ SMI raises as a special circumstance that, by virtue of the joint motion and the denial of its request to intervene, the Court of International Trade will be permitted "to insulate its decisions and actions from appellate review by this Court." Should the case continue and the Government choose not to appeal an adverse decision, we do not read the court's decision as foreclosing intervention pursuant to Rule 24(a)(2) under such circumstances. While the court ruled that SMI's participation as *amicus curiae* "waived any right it would

17. SMI is correct that the Government did not seek to take an interlocutory appeal of Slip Op. 81·75 as SMI would propose to request. The Government waived no ultimate rights in failing to take this action, and we see this as a matter of trial strategy rather than prejudice or failure to adequately represent SMI's interest.

Moreover, so long as the Government continues on a course directed at upholding the Commission's negative injury determinations, we do not agree with SMI that its interests are inadequately represented. Accordingly, if SMI's motion were to be considered one under Rule 24(a)(2), it could not be granted.

otherwise *have had* to intervene in the action" (emphasis added), the order clearly applies to rights SMI had at the time of the ruling, not to all future rights to intervene that may arise. Although SMI has lost its rights under Rule 24(a)(1) because it did not exercise that right in a timely manner, SMI has not lost any inchoate right under Rule 24(a)(2).[18]

### Conclusion

In view of the foregoing, we conclude that the court below did not abuse its discretion in denying SMI's motion to intervene as untimely. Accordingly, the decision of the Court of International Trade is *affirmed.*

---

**18.** In view of our affirmance on the ground of untimeliness, we do not find it necessary to consider the issue of waiver of rights because of participation as *amicus curiae.* We do note that unsuccessful intervenors are frequently relegated to the status of *amicus curiae* by the court. *See,* e.g., *Durkin v. Pet Milk Co.,* 14 F.R.D. 374, 381 (W.D.Ark.1953). .Holding that participation as *amicus* waives all rights of intervention would eliminate such flexibility in procedure. Thus, where a party participated as *amicus* in the district court, he was, nevertheless, permitted to intervene in the circuit court. *See SCM Corp. v. USITC,* 404 F.Supp. 124 (D.D.C.1975), *rev'd on other grounds,* 549 F.2d 812 (C.A.D.C.1977) (review of Commission Proceedings). In any event, every motion to intervene must be judged as of the time it is made.