**BELTON INDUSTRIES, INC.; Burlington Industries, Inc.; Chatham Manufacturing Company; Milliken & Company; Mount Vernon Mills, Inc.; Shuford Mills, Inc.; Delta–Woodside Mills, Inc.; West Point–Pepperell, Inc.; Bibb Manufacturing Company and JPS Textiles as successors in interest to J.P. Stevens & Co., Inc.; West Point–Pepperell, Inc. and the American Textile Manufacturers Institute, Inc. for itself and on behalf of Belton Industries, Inc.; Burlington Industries, Inc.; Chatham Manufacturing Company; Milliken & Company; Mount Vernon Mills, Inc. and Shuford Mills, Inc., Plaintiffs–Appellees,**

v.

**The UNITED STATES, Defendant–Appellee,**

**Government of Colombia, Defendant–Appellant,**

**and**

**Royal Thai Government, Defendant–Appellant.**

**BELTON INDUSTRIES, INC.; Burlington Industries, Inc.; Chatham Manufacturing Company; Milliken & Company; Mount Vernon Mills, Inc.; Shuford Mills, Inc.; Delta–Woodside Mills, Inc.; West Point–Pepperell, Inc.; Bibb Manu-**

facturing Company and JPS Textiles as successors in interest to J.P. Stevens & Co., Inc.; West Point–Pepperell, Inc. and the American Textile Manufacturers Institute, Inc. for itself and on behalf of Belton Industries, Inc.; Burlington Industries, Inc.; Chatham Manufacturing Company; Milliken & Company; Mount Vernon Mills, Inc. and Shuford Mills, Inc., Plaintiffs–Appellees,

v.

The UNITED STATES, Defendant–Appellee.

GOVERNMENT OF COLOMBIA, Defendant,

and

Royal Thai Government, Defendant–Appellee,

v.

GOVERNMENT OF SRI LANKA, Appellant,

and

Government of Peru, Appellant.

Nos. 92–1419, 92–1451, 92–1452, 92–1483.

United States Court of Appeals, Federal Circuit.

Sept. 7, 1993.

Rehearing Denied Oct. 4, 1993 in Nos. 92–1452 and 92–1483.

Kenneth J. Pierce, Willkie Farr & Gallagher, Washington, DC, argued for defendant-appellant, Royal Thai Government. With him on the brief were William H. Barringer and Daniel L. Porter.

Gregory J. Spak, Mudge, Rose, Guthrie, Alexander & Ferdon, Washington, DC, for appellants, Government of Colombia and Government of Sri Lanka. With him on the brief were Michael P. Daniels and Gary Welsh, Prather, Seeger, Doolittle and Farmer, Washington, DC, for Government of Peru.

Ginger L. Levy, Wilmer, Cutler & Pickering, Washington, DC, argued for plaintiffs-appellees, Belton Industries, Inc. et al. With her on the brief were John D. Greenwald and Ronald I. Meltzer.

Before ARCHER, Circuit Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

The Government of Colombia and the Royal Thai Government appeal the Court of International Trade's reversal of the Commerce Department's (Commerce's) termination of textile and apparel product investigations. *Belton Indus., Inc. v. United States,* Consolidated Court No. 90–09–00474, slip op. no. 92–39 (Ct. Int'l Trade Mar. 24, 1992); slip op. no. 92–64, 1992 WL 101053 (Ct. Int'l Trade May 7, 1992). The governments of Sri Lanka and Peru appeal the trial court's denial of their post-judgment motions to intervene in that court's review of Commerce's revocation of countervailing duty orders on textile and apparel products. *Belton Indus., Inc. v. United States,* 797 F.Supp. 1000 (Ct. Int'l Trade July 7, 1992). Because domestic textile manufacturers timely objected to the proposed terminations, this court affirms the Court of International Trade's judgment on the Colombian and Thai textile product proceedings. This court also affirms the denial of the untimely motions to intervene. Because no interested party objected to the proposed termination in the Colombian apparel proceeding, however, this court reverses the judgment on that proceeding.

*Background*

In August 1984, Commerce initiated countervailing duty (CVD) investigations into textile and apparel products from Argentina, Colombia, Peru, Sri Lanka, and Thailand. Commerce investigated separately textile products and apparel products from each country. After its investigations, Commerce issued CVD orders for textile and apparel products of Argentina, Peru, and Sri Lanka and for apparel products from Thailand. *Final Affirmative Countervailing Duty Determinations and Countervailing Duty Orders; Certain Textile Mill Products and Apparel From Argentina,* 50 Fed.Reg. 9846 (Mar. 12, 1985); *Final Affirmative Countervailing Duty Determinations and Countervailing Duty Orders; Certain Textile Mill Products and Apparel From Peru; and Rescission of Initiation of Investigations With Respect to Hand–Made Alpaca Apparel and Hand–Made Carpets and Tapestries,* 50 Fed.Reg. 9871 (Mar. 12, 1985); *Final Affirmative Countervailing Duty Determinations and Orders; Certain Textile Mill Products and Apparel From Sri Lanka; Cotton Inspectors' Gloves,* 50 Fed.Reg. 9826 (Mar. 12, 1985); *Final Affirmative Countervailing Duty Determination and Countervailing Duty Order; Certain Apparel From Thailand,* 50 Fed.Reg. 9818, 9819 (Mar. 12, 1985). Reaching agreements with the respective foreign governments, Commerce suspended its investigations of textile products from Thailand and of textile and apparel products from Colombia. *Certain Textile Mill Products From Thailand; Suspension of Countervailing Duty Investigation,* 50 Fed.Reg. 9832 (Mar. 12, 1985); *Certain Textile Mill Products and Apparel From Colombia; Suspension of Countervailing Duty Investigations,* 50 Fed.Reg. 9863 (Mar. 12, 1985).

Appellees are eight members of the American Textile Manufacturing Institute (ATMI), a trade association. ATMI and two domestic unions, the Amalgamated Clothing and Textile Workers Union (ACTWU) and the International Ladies Garment Workers Union (ILGWU), were the original petitioners in the CVD investigations. When questions arose concerning ATMI's standing as an interested party, ATMI amended the petitions

to add eight of its member companies as petitioners. Commerce determined that the eight companies had standing as "interested parties" for the textile product investigations. *Preliminary Affirmative Countervailing Duty Determinations; Certain Textile Mill Products and Apparel From Indonesia,* 49 Fed.Reg. 49672, 49673 (Dec. 21, 1984). Commerce recognized ACTWU and ILGWU as interested parties for the apparel investigations. *Id.* Commerce made both decisions final in *Final Negative Countervailing Duty Determinations; Certain Textile Mill Products and Apparel From Malaysia,* 50 Fed. Reg. 9852, 9852–53 (Mar. 12, 1985).[1]

With one exception not at issue,[2] no interested party requested administrative review of the CVD orders or the suspension agreements for the next four years. In February and March 1990, under 19 C.F.R. § 355.25(d)(4)(i) (1990), Commerce published in the Federal Register notice of its intent to revoke the CVD orders and to terminate the suspended investigations. *See Certain Textile Mill Products and Apparel From Peru; Intent To Revoke Countervailing Duty Orders,* 55 Fed.Reg. 7358 (Mar. 1, 1990); *Certain Textile Mill Products and Apparel From Sri Lanka; Intent To Revoke Countervailing Duty Orders,* 55 Fed.Reg. 7358 (Mar. 1, 1990); *Certain Textile Mill Products From Argentina; Intent To Revoke Countervailing Duty Order,* 55 Fed.Reg. 7358 (Mar. 1, 1990); *Certain Textile Mill Products and Apparel From Colombia and Certain Textile Mill Products From Thailand; Intent To Terminate Suspended Investigations,* 55 Fed.Reg. 6669 (Feb. 26, 1990). Commerce did not send separately written notice to the interested parties in any of the proceedings. Commerce did send, however, written notice to ATMI of the proposed revocations of CVD orders on products from Argentina and Peru. Commerce also sent written notice to Wilmer, Cutler and Pickering (Wilmer), the law firm representing ATMI and the eight individual companies,[3] of the proposed revocations of CVD orders on products from Peru and Sri Lanka. It sent no written notice of the proposed termination of the investigations of products from Colombia and Thailand. Commerce sent no written notice to any of the eight individual appellees in any of the proceedings. The Federal Register notice and the written notices gave interested parties until March 31, 1990 to file objections.

On March 30, 1990, Wilmer sent to Commerce letters objecting to each of the proposed revocations and terminations. Wilmer sent the objections "on behalf of the American Textile Manufacturers, Institute, Inc. ('ATMI') and its member companies." Commerce refused to recognize the objections on the grounds that ATMI did not have standing to object. In letters dated June 14, 1990 and July 13, 1990, Wilmer explained that it had filed the March 30, 1993 objections on behalf of the eight members of ATMI whom Commerce previously had recognized as interested parties. Commerce rejected this

---

1. Commerce adopted these findings in its orders concerning products from the five countries whose products were under investigation. *See Final Affirmative Countervailing Duty Determinations; Certain Textile Mill Products and Apparel From Colombia,* 52 Fed.Reg. 13272, 13273 (Apr. 22, 1987); *Final Affirmative Countervailing Duty Determinations and Countervailing Duty Orders; Certain Textile Mill Products and Apparel From Peru; and Rescission of Initiation of Investigations With Respect to Hand–Made Alpaca Apparel and Hand–Made Carpets and Tapestries,* 50 Fed. Reg. 9871, 9872 (Mar. 12, 1985); *Certain Textile Mill Products and Apparel From Colombia; Suspension of Countervailing Duty Investigations,* 50 Fed.Reg. 9863, 9864 (Mar. 12, 1985); *Final Affirmative Countervailing Duty Determinations and Countervailing Duty Orders; Certain Textile Mill Products and Apparel From Argentina,* 50 Fed. Reg. 9846, 9847 (Mar. 12, 1985); *Certain Textile Mill Products From Thailand; Suspension of Countervailing Duty Investigation,* 50 Fed.Reg. 9832, 9839 (Mar. 12, 1985); *Final Affirmative Countervailing Duty Determinations and Orders; Certain Textile Mill Products and Apparel From Sri Lanka; Cotton Inspectors' Gloves,* 50 Fed.Reg. 9826, 9826–27 (Mar. 12, 1985); *Final Affirmative Countervailing Duty Determination and Countervailing Duty Order; Certain Apparel From Thailand,* 50 Fed.Reg. 9818, 9819 (Mar. 12, 1985).

2. Apparently, Commerce reviewed the countervailing duty order on apparel from Argentina for the years 1986 and 1989. These reviews, however, are not before this court.

3. Although representing the apparel unions during the original investigations, Wilmer apparently did not represent the unions at the time Commerce sent notice of its proposed revocations and terminations.

explanation as an untimely attempt by the eight companies to object.

On August 3, 1990, Commerce revoked the CVD orders against products from Argentina, Peru, and Sri Lanka and terminated the suspended investigation of textile and apparel products from Colombia. 55 Fed.Reg. 32940, 32940–43, (Aug. 13, 1990). On November 15, 1990, Commerce terminated in part the suspended investigation of textile products from Thailand. *Certain Textile Mill Products From Thailand; Termination of Suspended Countervailing Duty Investigations (in Part)*, 55 Fed.Reg. 48885, 48885–87 (Nov. 23, 1990).

### *Court of International Trade Decision*

The Court of International Trade granted judgment on the agency record to appellees under Court of International Trade Rule 56.1. *Belton Indus., Inc. v. United States*, Consolidated Court No. 90–09–00474, slip op. no. 92–39 (Ct. Int'l Trade Mar. 24, 1992); *see also, Belton Indus., Inc. v. United States*, Consolidated Court No. 90–09–00474, slip op. no. 92–64, 1992 WL 101053 (Ct. Int'l Trade May 7, 1992) (revising Mar. 24, 1992 order). The trial court held the revocations and terminations unlawful because Commerce had violated its regulations requiring written notice to appellees. The court ruled in the alternative that the revocations and terminations were unlawful because appellees had submitted timely objections to Commerce in each of the proceedings.

Two months after the Court of International Trade first granted appellees' motion for judgment upon the agency record, the governments of Sri Lanka and Peru sought to intervene. The court ruled that the Royal Thai government's filing of a Notice of Appeal. from the court's earlier grant of judgment to appellees divested the court of jurisdiction over the case and the motions. In the alternative, the court denied the motions as untimely after balancing the factors presented in *Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703 (CCPA 1982).

### *Discussion*

### *Standards of Review*

Appellees instituted this consolidated action before the Court of International Trade under 19 U.S.C. § 1516a(a)(2)(B)(iii) (1988), which allows any interested party to challenge Commerce's final determinations to revoke CVD orders or to terminate suspended investigations. By its terms, 19 U.S.C. § 1516a(a)(2)(B)(iii) (1988) allows interested parties to contest "[a] final determination . . . by the administering authority or the Commission under section 1675 of this title." 19 U.S.C. § 1675(c) (1988) authorizes Commerce, after review, to revoke CVD orders and antidumping orders and to terminate suspended investigations.

■ The Court of International Trade reviews Commerce's determinations for sufficiency of evidence and accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). Although reviewing' the Court of International Trade's judgment, 28 U.S.C. § 1295(a)(5) (1988), this court must also review Commerce's final determination and the agency record to check the Court of International Trade's application of the statutory standard of review. *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 932 (Fed.Cir.1984). This court also reviews the Court of International Trade's determinations on the timeliness of Sri Lanka's and Peru's motions for abuse of discretion. *Sumitomo*, 669 F.2d at 707.

### *Sufficiency of Notice*

■ The Court of International Trade rejected Commerce's termination of the suspended investigations of Colombian textile and apparel products and Thai textile products. 19 C.F.R. § 355.25(d) (1990) governs:

> (4)(i) If for four consecutive annual anniversary months no interested party has requested an administrative review, under § 355.22(a), of an order or suspended investigation, not later than the first day of the fifth consecutive annual anniversary month, the Secretary will publish in the FEDERAL REGISTER notice of "Intent to Revoke Order" or, if appropriate, "Intent to Terminate Suspended Investigation."

(ii) Not later than the date of publication of the notice described in paragraph (d)(4)(i) of this section, the Secretary will serve written notice of the intent to revoke or terminate on each interested party listed on the Department's service list and on any other person which the Secretary has reason to believe is a producer or seller in the United States of the like product.

(iii) If by the last day of the fifth annual anniversary month no interested party objects, or requests and administrative review under § 355.22(a), the Secretary at that time will conclude that the requirements of paragraph (d)(1)(i) of this section for revocation or termination are met, revoke the order or terminate the suspended investigation, and publish in the FEDERAL REGISTER the notice described in paragraph (d)(3)(vii) of this section.

Commerce did not send written notice to appellees in either of the textile product proceedings, despite its prior recognition of them as interested parties. Hence, Commerce violated 19 C.F.R. § 355.25(d)(4)(ii) (1990).

 Despite Commerce's violation, appellees suffered no prejudice. Appellees' counsel, Wilmer, received actual notice of each proposed termination. In fact, Wilmer acted on that actual notice by filing timely objections on behalf of ATMI and the eight companies in each proceeding. Notice to counsel is notice to the client unless the applicable notice provision expressly requires otherwise. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 92–93, 111 S.Ct. 453, 455–56, 112 L.Ed.2d 435 (1990). Here, 19 C.F.R. § 355.25(d) does not state that notice to counsel is insufficient. Because appellees' counsel received actual notice, Commerce's violation did not prejudice appellees. Accordingly, Commerce's violation was harmless error. *See Cornelius v. Nutt*, 472 U.S. 648, 663, 105 S.Ct. 2882, 2891, 86 L.Ed.2d 515 (1985) (holding that agency delay in providing notice of impending employee removal proceeding was harmless error because it did not cause substantial harm or prejudice).

Nonetheless, the Court of International Trade correctly found that Commerce should have accepted the March 30, 1990 letters from Wilmer as proper and timely objections on behalf of the eight appellees. Under 19 C.F.R. § 355.25(d)(4)(iii), Commerce could terminate the suspended proceedings only if no interested party objected by the March 31, 1990 deadline. Wilmer sent letters timely objecting to each of the proposed actions "on behalf of [ATMI] and its member companies." Commerce already had recognized that the eight companies were interested parties. Commerce had recognized them as interested parties when ATMI amended the original petitions and substituted the companies as petitioners. Under these circumstances, Commerce should have known exactly to whom Wilmer was referring when Wilmer indicated that it was sending the letters on behalf of ATMI "and its member companies."

The statute does not impose on interested parties an exacting standard for filing objections. Neither does the regulation require exactitude from objecting parties. Rather, it requires reasonable notice to Commerce of objection to a proposed termination. Wilmer gave Commerce, and the foreign governments, reasonable notice of the objection and of the identities of the interested parties. In these same proceedings, Commerce had previously recognized the eight companies as interested parties. Therefore, Commerce's own files revealed, or should have revealed, the identities of the eight companies. In light of the contest over recognition of the eight companies' standing as interested parties, Commerce and the respective foreign governments knew or should have known the identities of the objecting parties from Wilmer's description.

 In sum, 19 C.F.R. § 355.25(d) applies a reasonable notice standard to both Commerce's obligation to inform interested parties and interested parties' objections to Commerce. Accordingly, this court affirms the Court of International Trade's holding that Commerce's termination of the suspended investigations of textile products from Colombia and Thailand was unlawful.

The record reveals that no interested party filed an objection to the notice of proposed termination for apparel products from Co-

lombia. Neither ATMI nor the eight companies are interested parties with respect to the apparel proceedings.[4] Without being interested parties, they did not have standing to appeal the termination of the Colombian apparel investigation. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (plaintiffs do not have standing to assert legal rights or interests of third parties); *McGowan v. Maryland,* 366 U.S. 420, 429, 81 S.Ct. 1101, 1106–07, 6 L.Ed.2d 393 (1961) (same). Therefore, the trial court could not properly reach the merits of a claim that Commerce unlawfully terminated that investigation. Accordingly, this court reverses the Court of International Trade's judgment and order holding unlawful the termination of the suspended investigation of Colombian apparel products.

*Motions to Intervene*

Court of International Trade Rule 24(a) provides that "[u]pon timely application, anyone shall be permitted to intervene in an action" under certain circumstances. Under *Sumitomo,* the Court of International Trade evaluated the timeliness of Sri Lanka's and Peru's post-judgment motions in light of three factors:

(1) the length of time during which the would-be intervenor[s] actually knew or reasonably should have known of [their] right[s] . . . ;

(2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor[s] by denying intervention.

(3) existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sumitomo,* 669 F.2d at 707 (footnotes omitted).

■ Both Sri Lanka and Peru were aware of the Court of International Trade proceedings from their inception. Although their rights to intervene arose when the eight ATMI companies instituted proceedings in the Court of International Trade, *id.* at 707–

08, Sri Lanka and Peru chose to wait nearly two years before seeking to intervene. If the trial court had allowed Sri Lanka and Peru to intervene, appellees would have suffered prejudice. Specifically, appellees would have had to defend against two additional parties and address new issues in a case that had already been decided. This prejudice outweighs any harm to Sri Lanka and Peru caused by their own tactical decisions not to appear in the Court of International Trade proceeding. No unusual circumstances warrant granting the motions.

Both Sri Lanka and Peru were content to sit on the sidelines during this dispute and let other parties, particularly the United States Government, do the heavy lifting. They sought to intervene only when they realized, too late, that these other parties would not do all of their work for them. This court discerns no abuse of discretion in the Court of International Trade's weighing of the *Sumitomo* factors or its denial of Sri Lanka's and Peru's motions to intervene.

In addition, because Sri Lanka was not a party, the trial court properly denied its Rule 60(b) motion. Only parties may file Rule 60(b) motions. Ct. Int'l Trade R. 60(b). Accordingly, this court affirms the Court of International Trade's denial of Sri Lanka's and Peru's motions to intervene and declines to review that portion of the Court of International Trade's May 7, 1992 order and March 24, 1992 opinion on CVD orders for products from Sri Lanka and Peru.

*Conclusion*

For the reasons stated above, this court affirms the order of the Court of International Trade denying Sri Lanka's and Peru's motions to intervene. This court also affirms the judgment of the court in holding unlawful Commerce's termination of suspended investigations of textile products from Colombia and Thailand. This court reverses the judgment of the court holding unlawful Com-

---

4. During oral argument this court learned that Wilmer, Cutler and Pickering did not represent the unions at the time it received notice of Commerce's proposed revocations and terminations. This disclosure calls into question Commerce's

termination of the suspended investigation of Columbian apparel products due to its failure to notify all interested parties. The interested unions, however, did not file an appeal to the Court of International Trade.

merce's termination of the suspended investigation of apparel products from Colombia.

Each party to bear its own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART.