The **CHEROKEE NATION OF OKLAHOMA, Plaintiff,**

v.

The **UNITED STATES, Defendant.**

The **Choctaw Nation of Oklahoma and the Chickasaw Nation, Consolidated Plaintiffs,**

v.

The **United States, Defendant.**

**Nos. 218–89L, 630–89L.**

United States Court of Federal Claims.

Oct. 9, 2002.

---

James G. Wilcoxen, Muskogee, OK, counsel of record for plaintiff.

Bob Rabon, Hugo, OK, counsel of record for consolidated plaintiffs.

R. Anthony Rogers, General Litigation Section, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, for defendant, with whom was John C. Cruden, Acting Assistant Attorney General. Alan R. Woodcock, U.S. Department of the Interior, of counsel.

## OPINION

DAMICH, Chief Judge.

### I. Introduction

This is a case in which the United Keetoowah Band of Cherokee Indians (UKB) moves for leave to intervene as a plaintiff pursuant to Rule 24 of the Rules of the United States Court of Federal Claims (RCFC). Because the Court finds the UKB's motion to be untimely, it is hereby ORDERED that the motion to intervene is DENIED.

### II. Background

The Cherokee Nation of Oklahoma, the Choctaw Nation of Oklahoma, and the Chickasaw Nation (Plaintiffs) have been in litigation for the past 13 years, seeking to adjudicate rights and claims relating to the United States' breach of fiduciary trust duties relating to the management and care of natural resources and property interests in the Arkansas Riverbed.

The UKB is a federally recognized Indian Tribe that has an official UKB Constitution and By–Laws that were approved by the Secretary of the Interior on May 8, 1950, pursuant to the Oklahoma Indian Welfare Act, 25 U.S.C. §§ 501–509 (OIWA). The UKB claims that it is the real successor to the historical Cherokee Nation. As the heir and descendant, the UKB claims that it has been denied and deprived of the possession of and the full economic use and benefit of the tribal lands and resources at issue in the ongoing litigation.

On March 1, 2000, the UKB filed an amicus curiae brief seeking to have the present case dismissed. The UKB took no further formal action before this Court. At the present time, settlement negotiations have evolved for two years and settlement appears likely due to legislation currently pending before the United States Senate. The United States House of Representatives has already passed a bill entitled H.R. 3534. The UKB filed its motion to intervene before the Court on August 30, 2002.

### III. Analysis

Sections (a) and (b) of the United States Court of Federal Claims rule regarding intervention, RCFC 24, are fundamentally identical to Rule 24(a) and (b) of the Federal Rules of Civil Procedure (FRCP).[1] Intervention pursuant to RCFC 24(a) allows anyone intervention of right upon timely application when a United States statute confers an unconditional right to intervene or when:

> the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

RCFC 24(a).

Intervention pursuant to RCFC 24(b) may allow anyone permissive intervention upon timely application if a statute of the United States has conferred a conditional right to intervene or when:

> an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

RCFC 24(b).

According to the United States Supreme Court, both intervention as of right and permissive intervention rely on timely application. *NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). If such an application is untimely, intervention must be denied. *Id.* "Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review." *Id.* at 366, 93 S.Ct. 2591.

■ In reviewing the timeliness of a motion to intervene, the Court must balance the following factors:

> (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene; (2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention; (3) existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 69 C.C.P.A. 75, 669 F.2d 703, 707 (C.C.P.A.1982) (footnoted citations omitted).

### A. Length of Time

■ The present case has been pending for 13 years before this Court. In essence, however, this matter has been ongoing since the 1970 Supreme Court decision confirming title to the bed and banks of the Arkansas river in the Cherokee, Choctaw and Chickasaw Nations. *Choctaw Nation v. Oklahoma*, 397 U.S. 620, 90 S.Ct. 1328, 25 L.Ed.2d 615 (1970). Plaintiffs have been involved in multiple ongoing negotiations and lawsuits with the United States in the past 32 years seeking compensation to resolve the dispute. No evidence indicates that the UKB has, at any time, intervened to assert an interest or claim.

Rather than intervene, the UKB filed an amicus curiae brief on March 1, 2000. In its brief, the UKB argued that it was a necessary and indispensable party absent from the lawsuit.[2] Because the UKB refused to waive

---

1. The only distinction is that FRCP Rule 24(b) contains an additional passage dealing with provisions for parties relying on a statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order. Such a distinction is irrelevant to this proceeding before the Court.

2. The UKB argued that there could never be complete relief among the existing parties because the trust lands for which the Cherokee Nation of Oklahoma sought compensation were unalloted lands conveyed to the Old Cherokee Nation pursuant to the 1835 Treaty of New Echota. UKB asserted that because the UKB is the successor to the Old Cherokee Nation, UKB has an ownership right in the unalloted lands.

its sovereign immunity from unconsented suit, however, it could not then be joined as a party to the lawsuit. By *electing* to avoid asserting itself as a party to the case, the UKB passed up an opportunity to dispute its position and stake out a portion of the settlement. While settlement negotiations occurring subsequent to the filing of the amicus brief were off-the-record, the UKB failed to take any formal action in pursuit of a remedy subsequent to filing its brief. Further, when H.R. 3534 was introduced with bipartisan support in the United States House of Representatives on December 19, 2001, the UKB *still* refrained from moving to intervene in the case. The UKB waited to bring its motion to intervene until August 30, 2002, shortly after the House Resources Committee unanimously approved the bill and it became apparent that the pending legislation might have a realistic chance of being passed by Congress prior to the end of the current congressional session.

In light of the inordinate amount of time from when the UKB first knew or reasonably should have known of its right to intervene and the time that the UKB actually filed its motion to intervene, the time factor weighs heavily against the UKB. *See Cheyenne–Arapaho Tribes of Indians of Okla. v. United States,* 1 Cl.Ct. 293, 296 (1983) (finding six-year delay in applying for intervention a considerable factor in denying intervention application as untimely).

### B. Prejudice to Existing Parties

Despite assertions by the UKB that it does not seek to disrupt the present status of the case, but rather seeks to participate in the administration of the settlement award, the fact remains that allowing the UKB to intervene would force the need for further debate among the parties to the litigation and irreparably impair the pending legislation from passage before both houses of Congress during this congressional session. As it now stands, the bill passed by the United States House of Representatives has a strong chance of being passed by the United States Senate. This provides Plaintiffs the best chance they have had to date of resolving this matter and being compensated for abuses stretching back more than 150 years. *Any* activity by this Court to disrupt such progress would greatly prejudice the existing parties to the lawsuit.

On the other hand, prohibiting the UKB from becoming a party to this case would force it to forfeit any potential interest in this particular settlement. Additionally, sovereign immunity from unconsented suit would preclude the UKB from seeking relief directly from the Cherokee Nation of Oklahoma. Despite such a predicament, the Court is heretofore unconvinced that the UKB has a definitive stake in the bed and banks of the Arkansas River to justify disrupting legislation that would compensate Indian Tribes that have previously been adjudicated to have an interest in such lands. Moreover, the UKB could still assert a claim against the Government for its own settlement package if it were to show that it too had indeed possessed title to such land. Thus, in weighing the prejudice to the Plaintiffs against the prejudice to the UKB, the Court finds that allowing intervention would cause greater prejudice to the Plaintiffs.

### C. Unusual Circumstances

Upon careful analysis of the briefs submitted by the existing parties to the litigation and the UKB, the Court finds the only unusual circumstance worthy of mention to be the assertion by the UKB that it failed to attempt intervention at an earlier time due to a lack of sufficient financial resources. While the Court is sympathetic to the UKB's financial difficulties, it remains unconvinced that such circumstances prevented the UKB from filing a motion to intervene but were not an obstacle to the filing of the UKB's earlier amicus curiae brief in March of 2000. In fact, it appears to the Court that the UKB slept on its rights, choosing to conserve resources and avoid entering the litigation until it became apparent that settlement might actually come to fruition. This Court finds such tactics supported by supposed "unusual circumstances" to weigh in favor of denying the UKB's intervention motion.

### IV. Conclusion

Because the Court finds that the aforementioned factors weigh in favor of finding

the UKB's motion to intervene untimely, the motion is hereby DENIED.